Mr. Zustiee McLEAH
 

 delivered the. opinion of the court.
 

 This writ of error brings before tis the. judgment of the Circuit Court for the district of Missouri, ..
 

 
 *144
 
 Boyle brought an action of trespass and ejectment in tbe ' Circuit Court for a common-field lot, in what was formerly known as tbe Big Prairie, of' St. Louis, containing one arpent in front, on Broadway, in tbe city aforesaid, by the depth, of forty arpens, running westwardly, being tbe same lot of land
 
 J
 
 granted by tbe Spanish Government to Moreau, and confirmed to bis representatives by the United States, and known as-survey 1,480. '
 

 The defendant pleaded not guilty. A verdict of guilty was found against him for an undivided two-fifths of thé -land described. ■ ■
 

 ' A grant-of the land claimed 'under the Spanish Government was proved to have been made to. Francis Moreau, who .oceu- . pied tbe land some time before bis death,- which took 'place in. 1802. He left seven children surviving him — three sons and four daughters. His sons were named. Joseph,, Alexis, and Louis; his daughters, Manette, widow of one Cadeaú; and af-terwards wife of Louis Collin; Marie Louise, Wife of Joseph Menard; Helen, who' afterwards intermarried with Pierre Cerré; and Angelique, who intermarried.with Hotaine Mal-lette. • -
 

 , The plaintiff gave in evidence a ’ sheriff’s ■ deed, -dated the 24th of February^ 1853, Which recites a judgment in favor of David tílary and William’ Waddingham, against u^ngelique’ Mallette,; Pierre. Willemm, and Melanie Cerré, his wife, Felix Pingal and. Josephine, Cerré, -his wife, by hey guardian,’ for $455.31, on Which an execution was issued, and levied On the-defendant’s land,-designated-as,survey 1,480, and,the-samé was ' sold the 19th'of February, 1853, to the plaintiff Boyle, .to whom .the above, deed was .given, which' purports to convey all the right and interest of the defendants. .
 

 .* The plaintiff proved that defendant had been in possession of the premises since 1839.’ .' ; ’¿
 

 On the,part of the defendant it was proved that' in the summer of 1820, John Mullanphy built1 a small brick house, which stands partly on the premises sued for, and partly on one of. the common-field lots' .confirmed to Vien. Soon after, the house was built, Mullanphy fenced three or four acres óf grouiid, including the house. In 1822 or 1823, he'enclosed'fifteen or' twerty acres, and in’1835 or 1836,- John .O’Fallon, the executor . of Mullanphy, induced- Waddingham- to- enclose all the land claimed by the estate of Mullanphy in that neighborhood,, which-included the land sued for. ' The.house and enclosures were rented, to different persons from time to,, tinie, and were occupied with occasional intervals, sometimes of several monthsj-In 1846 or 1847* Waddingham’s fence fell down, and the tract "
 
 *145
 
 lay vacant and unenclosed for a year or two, when portions of it were enclosed by the heirs of Mullanphy...
 

 At the trial, a paper was offered, in evidence, purporting to' be the deed of Joseph Moreau and others, heirs of Erancis Moreau, deceased, dated the 3d of, September, 1818, ¡convey-ingtó Pierre Chouteau all their estate and-interest in the tract ■of land in the declaration described. A certificate of Thomas R. Musick’, a justice' of the ^eace, certifying that Joseph Me-nard and wife, Joseph Ortiz and his wife, signed the instrument, and acknowledged it to be their deed. There was also offered an instrument .purporting to be a deed of Pierre Reaume and Marceline, his wife, and <5f Joseph Menard and Marie Louise Moreau, dated 6th November, 1819) conveying to,Pierre Chou-teau their interest in the land conveyed by their co-heirs, by the foregoing deed. Also, there was offered a certificate of Raphael ‘Widen, notary public, of the acknowledgment of this instrument, the 6th November, Í8Í9; and also a certificate'that both the instruments were recorded 6th June, 1822.'
 

 It was proved that the' above' papers, after the death of John Mullanphy, came' into the possession of John O’Eallon, having been found ambng the papers of the i deceased.
 

 The signatures to the first instrument were affixed by marks, the names being in the handwriting pf E. M. Guyol and •others.
 

 ■ Certain persons swore that they heard severál of the heirs-say .they had sold their land to Pierre Chouteau. That Joseph Moreau lived in Louisiana .in a destitute condition, where he died; and that he was never heard to claim any land in St. Louis, and, in fact, that he' said he had sold his land in Missouri. . , ' - . ..
 

 .Pierre Chouteau and wife,, on the 30th October,-1819, conveyed the tract in controversy to John Mullanphy by deed, which was duly acknowledged and recorded;
 

 On the above evidence, the two deeds in *1818 and 1819' w;ere offered in evidence, to which the'plaintiff objected, “because the first deed'was not signed or acknowledged by Marie Collin, Angelique Mallette, and Helen Cerré, under whom he claims, and that it did not convey any title of the femes covert.” , . , '
 

 The defendant then offered in evidence a copy of the will of Francois Moreau, certified by S. D. Barlow, recorder; to. have been, taken from among the archives óf the French and Span-1 ish Governments,, deposited in his office, and-filed for repord on the 17th August, 1846, being archive 2,257., If the recorder had. power to certify, as to tub deposit of the will, it does not appear, by whom it was made, nor at what time. • -
 

 
 *146
 
 ■'This instrument .states, that in the year, 1798, on the'2d. Au-fust, we, Louis Collin, in default of a notary, went to the ome of St. Francis Dunegant, captain commandant of St. Ferdinand, of Florisant, assisted by Antoine Rivierre and five others named; where St. Francis Moreau went with Joseph . Moreau at my residence; .the said Francis Dunegant and the said'Francis Moreau declared and requested to make his last will, which he pronounced to us in a loud and intelligible voice, as follows, &c.: “Among other provisions, the testator names his son Joseph universal legatee, and afterwards declares it is with the reserve, that he shall reimburse to each of his brothers and sisters $27 silver out of the estate of their deceased mother, and it is declared that Joseph Moreau obliges himself to furnish certain articles-annually to his father during-his life.” ’■ The testimoneum is as follows: Done and passed at St. Ferdinand, in Florisant, the day and year aforesaid, and signed (after being read) before Don Francis Dunegant, captain commanding, and the aforesaid witnesses; the said Francis' Moreau .made his ordinary mark, &c.''
 

 ■At the time of offering the.will, the following deeds; and documents, were read in ¡evidence, as bearing upon said will, and its admissibility in evidence: a deed dated 2d April, 1818, from Joseph Moreau and others, for a lot on Third street, town ■of St. Louis. In the deed it is stated that Joseph'Menard, Aurora, the wife of Joseph Hortiz, are children of-• Moreau, alias Menard, deceased.' Also,-the inventory and account of sales of the estate- of Francis Moreau, the inventory of the community property of Francis Moreau and wife-, under the direction of Francis Dunegant, commandant, &c.
 

 On the foregoing testimohy the defendant moved the court ito instruct the jury as follows :
 

 1. .If the jury find that Francis Moreau* in his lifetime, was the owner of the lot in controversy; that he died prior to 1804, and that his two daughters, Mrs. Mallette andMrs. Cerré, took their husbands prior to 1804, then the several interests of said daughters in said .lot became upon' their marriage, and was their paraphernal property.
 

 2. If the jury find, as mentioned in instruction No. 1,-and. farther find,'that in the year 1818, Mallette and Pierre Cerré, husbands of said daughters, made the deed read in evidence by the defendants, then, under the evidence in this cause, the jury may presume that said daughters gave the administration of said paraphernal' property to their husbands, and that, the same was alienated with their consent.
 

 S. If the jury find, as mentioned in instruction No. 1, and further find, that defendants, .and those under whom, they.
 
 *147
 

 ‘
 
 S w o
 
 0
 
 g. it> CD O m* 3.'* -g P ■
 
 < &&
 
 g pli 2 5f a 1
 
 g ^
 
 S’w *<J Ea ¡3 o ujS (f® ■&® S® »=iS. a*5 p &wkey;(JQ |5ifa ,® 1 S'^1o.g0^ ^ O 2, t4 •&■*■• £3-tf* w .ty*
 
 _m
 
 M* & Tv. T OQ- P 4S? g-’^ on <*• H^2 i® H* Q U •? ' .P» a <í © 5 ® p m- in. m : ¿u-Qgg^& 5 l-g g. ® ^2
 
 W
 

 IL £h S a Pj | S g'1'14'» ’SltS CD rí P H • rt c-h P P P' P o.p/p? J® Pg£^8= S1 C?5 a 5 »<■ b tE rP ® ® 0;' ® Se S'-g'B ® bs • P g^ =*• 3. ®.
 
 $'%.%*
 
 B<g.8> P^ ®- d <=+5 r-r1 H ® 8» O F P ch K S-' E5 > 2 1 ® §»§•£. b" * g§ ^go* £.|.S fe3 $ §.S^“a © ,_ M ^®{J|? 5k S5 _j é-j P ü p-ab “ y o üj ■ • ^ a r* & a, g ^ g E-'gi' ^ag'B ^® 3 ro
 

 P S ® Mi ® ■ d-. K ■ ®
 
 Jt
 
 g .g- ■
 

 ■Fd"'+? i2 i ‘ o3 -bO o ’S 2 o
 
 a'
 
 h5 „ o £ 03 CO ©
 
 O^r-i
 
 © a g 8* o'. .-• ■ a í¿¡ — ¡T ©*££•. ^g.S-5* gig o 5 tras *53 ^P 0; O hs 8, p. ® 1 I eL?°o
 
 AV
 
 S.-Q g 2 ft. M $ ^ ^ Pjti*» m Etb pc — * '►d rt? 5- S’i-HiS •.-S'*-
 

 fj O' w 3. rt ri *r>3. © ©-. S* i © C. fr1 « — i. § I ® wg c+-oq Pj ©, r+-. o d ® 2 ® t_i Pj P ® Sr1 OS- _o"£jp
 
 Zi s
 
 ¡‘St''’ g.g a3.ro-B >d- Ci- *rj Sb 9
 
 m <*
 
 ,g ®- . &S-KJS,o-S 3.£fg
 
 t.ipfS
 
 gf’g 8 £ S a •g^ 2'2jI-í5|>I*Sí -® © á-l?1 ®, 2. Ci-.P. Cr a-g'g.&s»^ 5>® 5 ® ®-.- “ 4iC cf-tQ; ® g*® gi?® JctS~rg'lS g^'K01?^ 5 ® 5® H5® g.^®.« M ■53g tn o p O P^ pig'S-^d g 2 j S g ,®1? ®^® B b ® biP -.. ^_, ro P ^ cq © .P *P Í4 ’43 bO-g .. p «§ ^ *2 g S g3© g ® s § & .a
 
 TP
 
 SPsTrt 3 © ?|>2 OVB 2,s ®tg P'S b-S® . -3. ®. ^ a © Sr • P ^P'O gítí ^ H fe A <3> w 2 g g E®-3 b-'» g,“ ® pjfbp a^P 3;t?‘S'sS-"t9S~ asP-.P
 

 ‘I
 
 &9
 
 
 *148
 
 the succession, and that he was imprisoned for doing so, and that Pierre Chouteau had him released. Some evidence was given as to the deed having been deposited in the recorder’s office for record, and an endorsement that it was to be handed to Mullanphy.
 

 . The common-law was adopted in the .Missouri Territory in 1816¿ and consequently it governs all subsequent legal transactions. ' ' . s-
 

 The children of Moreau, being seven at the ' tinde of his ■decease, were reduced, by the death of Louis, intestate, and Marie, who also died intestate, to five. And it seems that’the plaintiff derived his title from two of the surviving daughters, Angelique arid Helen, and their heirs; he therefore claims under Louis, Marie, Helen, and Angelique. It seems not to be contested-that the property vested in the daughters, under the civil law; -ivas, paraphernal. A succession accruing to the wife during marriage is her paraphernal property, which she may administer without the consent or control of her' husband. (O’Conner
 
 v.
 
 Barre, 3 Martin Lou. Rep., 455.) The wife may give the . control of this property, in writing, to her husband. (1 White’s New Recopilacion, 56, note 33.)
 

 The Circuit Court coriimitted nó error in excluding from the jury the above deed. The execution of it,, by the parties under whom the plaintiff claims, is not proved, nor do the facts ■ relied on, from which a presumption is attempted to be ■ drawn in favor of its validity, authorize, such presumption. ■ The femes covert were under, disabilities. ' They could only divest themselves of their rights in the mode specially authorized.; Their husbands had no power, without their concur-, rence and action, to convey their real estate.
 

 The defendant offered to read a. certified copy of. the deed, to show its condition at the time it was recorded, but. the court' refused to permit such copy to be read.1 If the original deed was not evidence, it is difficult to perceive for what legal purposes recorded copy of it could be read., There was no error in’ this ruling by the .court.- • '
 

 There was no evidence that the will had been provéd,. or that the conditions stated in it had been cornplied with.
 

 A deed dated 2d April, Í81J, from Joseph Moréau and his brothers and-sisters, conveying to Hempstead and Earrar a lot which would have passed by, the supposed will to Joseph Moreau, had it .-beep, operative. Alsoj there was shown a sale bill of the personal properly of the estate on the 19th of April, 1803, Joseph Moreau being present, and that he purchased a part of the properly devised to him by the will.
 

 Also, it was shown that an administrator was duly appointed
 
 *149
 
 on the estate of Francis Moreau, and his estate was administered in the same manner as if he had died intestate. -
 

 By the Spanish law, a will was required to be proved by the attesting witnesses within one month after the decease of the testator; and, when proyed, it is required to he recorded. (1 White’s Recopilacion, 111; 2 Moreau and Carleton’s Partidas, 975-’6-’7.) The testator cannot disinherit a child without naming the child, and the reasons for doing so. (1 White’s Re., 107.). No heir can claim a devise, without performing the. condition annexed to it. (1 White’s Re., 103.) It is required that he shall appear. before the judge; and either accept pr reject the devise.. (1 White’s Re., 111, 127.) None of these requisites were performed by Joseph Moreau, who was made, by the will, universal'heir.
 

 If the will was a. genuine instrument, and Joseph was the universal heir, it could not have remained dormant, it would seem, for fifty years, or in the archives, without being brought to the light, and having on. it some judicial action. But whether it bé a geiiuine instrument or not, it has not been treated as valid, as no claim has been set up under it, and aÜ the heirs have acted, in regard to the estate of their father,, as though he had died intestate.
 

 Neither the déed to Chouteau, nor the will, can be admitted in evidence, without proof, as ,an ancient instrument. The rule embraces no instrument which is not valid upon its face, -and which does not contain every essential requirement of the law under which it was made. Neither the deed nor the will, comes within the rule, and we think the court very properly excluded them both from the jury.
 

 In regard to the second, third; and fourth instructions, which the court refused to give to tne.jury, there was no error.
 

 As early as December 17, 1818, the Territorial Legislature, passed an act limiting real actions, which remains m vforce. The act abolished all the rules of prescription under the Spanish law, and substituted a limitation pf. twenty years after action accrued, and, in case of disability by coverture, twenty years after it. ceased. La 1820, it appears- Mullanphy took possession of a part of- the premises in controversy, and from that time retained possession^. Some of the husbands had a life estate in the lands; but whether this was so or not is immaterial, as there is no bar to the claim of the plaintiff by the statute of limitations. ' . .
 

 By an act “prescribing the time for commencing actions,” approved March 10, 1835, (Revised Code, 396,) it , is " declared, in the 11th section, that “the provisions of this act shall not apply to any áction. commenced, nor to any cause where the
 
 *150
 
 right of action or entry shall have accrued, before the time •when this act takes effect, but the same shall remain subject to the laws now in force.”
 

 ■It will be observed, that the limitation act of 1818, being still in force, cannot operate on any of the femes covert of' whom the plaintiff claims. It did not begin to run against them until they became discovert, from which time it required twenty years* to bar. their right. Under such circumstances, no presumption can arise against them, as they had no power to prosecute any one who entered upon their land. No laches can be charged against ,them until diseoverture ,• and there is no ground to say that either the statute or lapse of time, since that' period, can affect the rights .of the plaintiff, or of those under whom he claims. The court, therefore, did not err in refusing to give to the jury the instructions requested.
 

 Upon the whole, the judgment of the Circuit Court is affirmed, with costs.