GEORGE KOCH, Appellant, *vs.* HENRY STREUTER, Appellee.

*Opinion filed February 20, 1908.*

1. DEEDS—*re-entry clause is important in determining whether provision is a covenant or a condition subsequent.* In determining whether a provision in a deed is a condition subsequent or a covenant, the absence or presence of a clause authorizing re-entry by the grantor in case of a breach of the provision is important; but if the intention, as shown by the language employed, is doubtful, the provision will be construed as a covenant.

2. SAME—*what provision of deed is not a condition subsequent.* A provision in a deed by heirs conveying property "upon condition that the grantee assumes and pay all debts, claims and obligations owing by" the ancestor of the grantors is not a condition subsequent but a covenant; but such provision creates a trust for the benefit of the creditors of the estate, and the grantee takes the title impressed with such trust.

3. ABSTRACTS OF TITLE—*when an objection to abstract of title is not waived.* A defendant to a bill for specific performance who specifically objects to a certain clause of a deed shown therein, which is relied upon as showing a failure by complainant to furnish a merchantable abstract, does not waive his objection by not giving the right reason why his objection to such clause is valid.

4. SAME—*what objection to abstract of title is valid.* An item in an abstract of title which shows in the chain of title a deed to the property upon a trust for the payment of all debts of the ancestor of the grantors is subject to valid objection, where there is no showing that the debts have been paid, other than that the estate has been settled and the administratrix discharged, or that the rights of unpaid creditors, if any exist, are barred by the Statute of Limitations.

5. SAME—*a tax deed, without precept or judgment appearing, shows color of title, merely.* An item of an abstract of title showing a tax deed in the chain of title cannot be relied upon as establishing more than mere color of title, where the abstract does not show any judgment, precept or affidavit upon which the tax deed is based.

6. SAME—*when defect in abstract of title is not aided by rule relating to ancient documents.* A defect, in an abstract of title, consisting of a failure to show that lands conveyed by the commissioners of the Illinois and Michigan canal were part of the lands selected and designated by the State of Illinois under the grant of the United States, is not cured by the fact that the deed, which is

more than thirty years old, recites that the lands conveyed are part of the lands granted by the United States to the State of Illinois "by act of 21st of March, 1827," to aid said State in opening the canal.

7. EVIDENCE—*purpose of the rule relating to ancient documents.* The rule relating to ancient documents, which, under some circumstances, will dispense with proof of the execution of a document which appears to be at least thirty years old, cannot be invoked for any purpose other than to relieve a party from the burden, otherwise imposed, of proving the due execution of the instrument.

8. SPECIFIC PERFORMANCE—*equity will not enforce unconscionable contract.* A court of equity will not lend its aid to enforce a contract for the exchange of properties, even though the contract may possess all technical requirements of a valid contract, where the evidence shows the contract is so one-sided that the complainant will gain a farm worth approximately $25,000 in exchange for land worth but little, if anything, more than the encumbrance upon it, which the defendant will be required to pay.

APPEAL from the Circuit Court of Morgan county; the Hon. O. P. THOMPSON, Judge, presiding.

WELTY, STERLING & WHITMORE, for appellant.

WORTHINGTON & REEVE, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a bill in equity filed by George Koch against Henry Streuter for the reformation and specific performance of a contract for the exchange of farms. Upon a hearing before the circuit court of Morgan county the bill was dismissed for want of equity. From this decree Koch appeals to this court. Streuter has assigned cross-errors upon the decree of the court dismissing his cross-bill, which he filed for the purpose of obtaining a rescission and cancellation of the alleged contract.

By the contract between the parties appellant agreed to convey to the appellee 341 acres of land located in LaSalle county, on the Illinois river, and appellee agreed to convey to appellant a fruit farm consisting of 199½ acres, located near West Salem, in Edwards county. Each of the parties

agreed to furnish an abstract showing a good and merchantable title to his land. Appellant contends that this clause in the contract does not express the agreement as the same was made, his contention being that as to 2.87 acres he was not to furnish an abstract showing a merchantable title. Appellant's contention in this respect is the ground upon which he seeks the reformation of the contract. The relief sought is resisted by appellee on the ground that appellant did not furnish an abstract showing a good and merchantable title to the LaSalle county land, and on the further ground that the contract is unfair, inequitable and was procured through fraud and misrepresentation by appellant.

Appellee's fruit farm in Edwards county is a very valuable property, worth about $25,000. The LaSalle county farm is shown by the weight of the evidence to be worth from $12 to $15 per acre. It is encumbered by a mortgage for $8500. By the agreement appellee was to exchange the fruit farm in Edwards county for the LaSalle county farm, assume the mortgage indebtedness and pay the appellant $250.

Some of the objections to the abstract of title furnished by appellant will be first noticed. It is to be remembered, however, that appellant's title is not in issue in this case, and any conclusion we may reach upon the question whether the abstract furnished complies with the contract is not a determination of appellant's title to the land.

*First*—One objection pointed out to the abstract of title is, that in a deed from Thirza D. Rogers and others (and all heirs-at-law of Roswell Dow) to Theresa E. Dow there is a condition which is not shown to have been complied with. The language of the deed is: "Upon condition that grantee assumes and pays all debts, claims and obligations owing by said Roswell Dow, deceased, with necessary costs of administration of estate." Conditions are either precedent or subsequent. Conditions subsequent are provisioned in a deed giving the grantor, by express words or necessary

implication, the right to re-enter and re-possess the premises upon the violation of the condition. Such conditions operate on estates already vested, while conditions precedent intervene and prevent the vesting until the condition is complied with. It is often a matter of difficulty to determine whether a certain provision annexed to a grant of real property is such a condition as that a breach of it confers the right of entry on the grantor or his heirs, or whether such provision is a covenant, restriction, limitation or trust imposed on the property, affecting the estate in a different way from that in which a true condition affects it. On page 121 of Preston's edition of Sheppard's Touchstone it is said: "Conditions annexed to estates are sometimes so placed and confounded amongst covenants, sometimes so ambiguously drawn, and at all times have in their drawing (when deeds, etc., are prepared by unskillful persons,) so much affinity with limitations, that it is hard to discern and distinguish them." Time has not removed or much lessened these difficulties. Indeed, the change in the meaning of technical words wrought by modern construction, the more varied uses to which lands may be put, and the ever increasing number of expressions employed to make contracts conform to the wants of our complex commercial situation, have tended rather to increase the difficulties during the two and one-half centuries that have elapsed since the clause quoted from the Touchstone was written. No particular form of words is absolutely essential to create a condition, but it is essential that the intention to create it shall be clearly shown by some words. If from the language employed it is doubtful whether the clause is a condition or a covenant it will be construed a covenant. The rule that where clauses are susceptible of different constructions that construction will be adopted which is most favorable to the grantee, obtains here.

One of the most important considerations in determining whether a clause is a condition subsequent or something

else, is the presence or absence of a "re-entry clause" by
the grantor or his heirs or of forfeiture of the estate for a
breach of the condition.   In *Post* v. *Weil,* 115 N. Y. 361,
(22 N. E. Rep. 145,) Weil having agreed to purchase land
refused to complete the purchase, for the reason that by
a former deed, through which the present vendor derived
title, the property was subject to the operation of a condi-
tion subsequent.   The action was brought to compel the
specific performance of the contract.   The clause relied on
in defense was as follows: "Provided, always, and these
presents are upon this express condition, that the said prem-
ises shall not, nor shall any part thereof, or any building
or buildings thereon erected or to be erected, be hereafter
used or occupied as a tavern or public house of any kind."
The court, in deciding that this language was a covenant
and not a condition subsequent, pointed out the absence of
any clause in the deed giving the grantor or his heirs the
right to re-enter for conditions broken, in the following
language: "If we can construe this clause as an obligation
to abstain from doing the thing described, which, by ac-
ceptance of the deed, became binding upon the grantee as
an agreement, enforceable in behalf of any interest entitled
to invoke its protection, I think we are in conscience bound
to give that construction and thereby place ourselves in ac-
cord with that inclination of the law which regards with
disfavor conditions involving forfeiture of estates.   In this
connection it may be noted that there is no clause in the
deed giving the right to re-enter for conditions broken.
*   *   *   The presence of a re-entry clause might make cer-
tain that which in its absence is left open to construction."
In *Board of Education* v. *Trustees,* 63 Ill. 204, this court
said: "In the construction of deeds, courts will always in-
cline to interpret the language as a covenant rather than a
condition."   In *Star Brewery Co.* v. *Primas,* 163 Ill. 652,
on page 658, this court said:   "There is nothing in the lan-
guage of the deed under consideration to indicate that it is

a deed upon condition precedent or subsequent. The words 'upon condition' are not used. There is no provision for re-entry in case of a breach of the covenant. Such a provision usually indicates an intent to create a condition subsequent. (*Kew* v. *Trainor,* 150 Ill. 150.) Conditions, especially conditions subsequent, are not favored in law, because they tend to defeat estates, and courts are inclined to construe clauses in deeds as covenants rather than conditions,"—citing *Gallaher* v. *Herbert,* 117 Ill. 160.

We are of the opinion that the clause in the deed under consideration is not a condition subsequent. This is the only objection pointed out or insisted upon by appellee to this particular deed. There is, however, an objection to this item in the abstract of title which we deem it our duty to point out. Appellee seeks to justify his refusal to perform this contract partly on the ground that appellant did not furnish an abstract of title showing a good merchantable title in him. He specifically objects to the clause already referred to in the deed to Theresa Dow. This objection raises the legal question whether the abstract, in this particular, shows a compliance with the contract. Having made the objection and called our attention to the clause in the deed which is relied on as showing a failure to comply with the contract, appellee should not be held to have waived the objection because he gave the wrong reason for it. We have already attempted to show that the clause objected to is not a condition subsequent. We think, however, that this clause creates an express trust in favor of the creditors of Roswell Dow, binding upon the grantee and all subsequent purchasers with notice. The authorities seem to be unanimous that where a conveyance is made of real estate upon condition that the grantee shall pay a specified sum of money to a third person, or pay the debts of the grantor or of some third person, the acceptance of the conveyance by the grantee with such clause in the deed creates a covenant on the part of the grantee to discharge the ob-

ligation imposed, and creates the relation of trustee and *cestui que trust* between the grantee and the persons for whose benefit the payment is to be made, without any act or assent on the part of the beneficiary. (Underhill on Trusts and Trustees, p. 38, and cases there cited; Tiffany & Bullard on Law of Trusts and Trustees, pp. 94, 95.) Mrs. Dow, in accepting this conveyance, received the title impressed with a trust. This trust being expressed in a deed found in the chain of title, followed the land into the hands of subsequent grantees. This deed was made in October, 1901. This abstract was tendered to appellee on the 27th or 28th of February, 1905, less than four years after the deed was executed. It cannot be said, as a matter of law, that creditors of Roswell Dow would be barred by limitation or *laches* by the lapse of time. There is no showing in the abstract or exhibits submitted therewith that there were no debts against Roswell Dow's estate, or that, if there were any, they had been paid. The only showing is that the estate of Roswell Dow had been settled and the administratrix discharged. This might well be and still the debts of the estate remain in part or wholly unpaid. Appellee was not required to accept a title under his contract unless it was free from doubt. We see no reason why, if there were creditors of Roswell Dow's estate, they might not maintain a bill to subject this land to the payment of such debts. Under such circumstances appellee was not required to accept the title. 3 Pomeroy's Eq. p. 1405, and cases there cited; *Snyder* v. *Spaulding,* 57 Ill. 480; *Hoyt* v. *Tuxbury,* 70 id. 331; *Close* v. *Stuyvesant,* 132 id. 607; *Lancaster* v. *Roberts,* 144 id. 213.

*Second*—It does not appear from the abstract furnished by appellant that any patent was ever issued by the United States government to any one for any part of these lands. The abstract shows that the trustees of the Illinois and Michigan canal executed deeds to all or a substantial portion of the lands in question in the year 1859. The ab-

stract purports to trace the title from the trustees of the Illinois and Michigan canal to appellant. It is contended on behalf of appellee that a deed from the canal commissioners, without any showing that the lands conveyed were a part of the lands granted by the general government to aid in the construction of a canal, is not sufficient evidence of title.

By an act of Congress passed March 30, 1822, the State of Illinois was authorized to survey and mark through the public land of the United States the route of the canal connecting the Illinois river with the southern bend of Lake Michigan. Said act granted the State of Illinois ninety feet on each side of the canal, subject to certain conditions in said act specified. The act of 1822 reserved every section of land through which the canal should pass from future sale until thereafter directed by law, and the State of Illinois was authorized to use any materials on the public lands adjacent to said canal that might be necessary for its construction. By a subsequent act passed March 2, 1827, for the purpose of aiding the State of Illinois in opening a canal to unite the waters of the Illinois river with those of Lake Michigan, the United States granted to the State of Illinois a quantity of land equal to one-half of five sections in width on each side of said canal, reserving each alternate section to the United States, to be selected by the commissioner of the land office under the direction of the President of the United States, from one end of said canal to the other. Said lands were made subject to the disposal of the legislature of the State for the purposes aforesaid, and for no other. The act of Congress provides that as soon as the route of said canal shall be located and agreed on by the State of Illinois, the Governor, or the person authorized to superintend the construction of said canal, should examine and ascertain the particular sections to which the State was entitled under the grant and report the same to the Secretary of the Treasury of the United States. Section 3 of

the act provided that the State of Illinois, under the authority of the legislature thereof, after the selection shall have been so made, shall have power to sell and convey the whole or any part of said land, and to give a title in fee simple therefor to whomsoever shall purchase the whole or any part thereof. By an act of the Illinois legislature the State conveyed to the trustees of the Illinois and Michigan canal "all the remaining lands and lots belonging to said canal fund, or which hereafter may be given, granted or donated by the general government to the State to aid in the construction of said canal."

There is no description in any of the acts of the legislature that we have been able to find or to which our attention has been called, of the particular sections which passed to the State under the act of Congress above referred to. Under the act of Congress the State was granted each alternate section in a strip five sections wide on each side of the canal, to be designated or selected by the Governor of the State or the person authorized to superintend the construction of said canal, which ascertainment and selection were to be reported to the Secretary of the Treasury, and the power of sale by the State was only given "after the selection shall have been so made." Until the selection was made by the State and reported to the Secretary of the Treasury of the United States there could be no certainty as to the particular sections of land falling within the grant nor could the title to any particular section vest in the State. In *Railroad Co.* v. *Fremont County,* 76 U. S. 89, it was held that a grant of lands by the United States to the State of Iowa to aid in the construction of a railroad from Burlington, on the Mississippi river, to a point on the Missouri river near the mouth of the Platte river, of every alternate section designated by odd numbers, for six sections in width on each side of said road, was a mere floating grant, and did not vest title to any particular section on the line of the road until the road was permanently located. In the

case of the grant to the State of Illinois to aid in the construction of the Illinois and Michigan canal the grant was of each alternate section, to be selected in the manner already pointed out. Until such selection was made the State had no power to convey. The abstract in question does not show that the lands conveyed by the trustees of the canal were among the lands selected by the State under the grant. Appellant's position in reply to this objection is, that the deed of the trustees of the Illinois and Michigan canal is saved from the objection under the rule relating to ancient documents; that the recital that the lands conveyed were "part of the lands granted by the United States by act of 21st of March, 1827, to aid said State in opening a canal to connect the waters of the Illinois river and those of Lake Michigan," found in the deeds, affords proof that the lands conveyed had been properly selected and designated so as to vest the title in the State of Illinois.

We do not understand that the rule of evidence which, under some circumstances, will dispense with proof of the execution of the document, which appears to be of the age of at least thirty years, can be invoked except to relieve a party from the burden, otherwise imposed, of proving the due execution of the instrument. (2 Jones on Evidence, sec. 312; 1 Greenleaf on Evidence, sec. 141; *Bradley* v. *Lightcap,* 201 Ill. 511.) In *Fell* v. *Young,* 63 Ill. 106, this court had before it an administrator's deed reciting an order of court authorizing the sale. The objection was, that there was no proof of jurisdiction in the court ordering the sale. The reply was, that the deed was more than thirty years old. This court, on page 110, said: "The doctrine that no proof of the execution of a deed thirty years old is required, springs from the fact that originally, by the common law and by the statutes of most of the States, one or more witnesses were required to attest its execution, by whom its execution should be proved. After the lapse of thirty years the presumption obtains that the attesting witnesses are all

dead. But no presumption arises from lapse of time that the party executing the deed had the power to convey the land. All that is shown in the case is the deed of·an administrator purporting to convey the land of his intestate, reciting therein an order of court which does not show that the court had jurisdiction to grant the order, nor is any order of the court shown. It is well settled if a deed purports to have been executed under a power and is sought to be used in evidence, the power must be shown.—2 Ph. on Ev. note, 429, p. 396." (See, also, *Meegan* v. *Boyle,* 60 U. S. 130; *Reuter* v. *Stuckart,* 181 Ill. 529.) We regard the objection above made to the abstract as well taken and as affording the appellee reasonable grounds for refusing to accept the title.

*Third*—Another objection to the abstract is, that it shows two tax deeds in the chain of title, but does not show any judgment, precept or affidavit upon which said tax deeds are based. There is no proof of possession and payment of taxes under said tax deeds as color of title which could support a claim of title by limitation. We think the objection to the abstract in this regard is valid. A tax deed issued by a county clerk, unless based upon a valid judgment, precept and affidavit, has never been held by this court to be anything more than mere color of title.

*Fourth*—Aside from the defects pointed out in the abstract, there is still another reason which in our opinion calls upon a court of equity to deny appellant a specific performance of this contract. Appellee's farm is conceded to be worth $25,000. The appellant's farm in LaSalle county is worth but little, if anything, above the encumbrance upon it, which, under the contract, the appellee assumed. In the light of the evidence in this record, if appellee be compelled to perform this contract, the result will be that appellant will gain and the appellee will lose approximately $25,000. Waiving, for the moment, all questions of fraud and misrepresentation, we are compelled to say that this contract

is so one-sided that a court of equity cannot lend its aid to its enforcement. Courts of equity will not lend their aid to assist one in realizing upon an unconscionable bargain, even though the contract under which it is claimed possesses all technical requirements. (*Frisby* v. *Ballance*, 4 Scam. 287; *McCabe* v. *Crosier*, 69 Ill. 501; *Bowman* v. *Cunningham*, 78 id. 48.) In a note to section 1405 of 3 Pomeroy's Equity it is said: "If, then, the contract itself is unfair, one-sided, unjust, unconscionable or affected by any other inequitable feature, or if its enforcement would be oppressive or hard on the defendant or would prevent his enjoyment of his own rights or would work any injustice, or if the plaintiff has obtained it by sharp and unscrupulous practices, by over-reaching, by trickery, by taking undue advantage of his position, by non-disclosure of material facts, or by any other unconscientious means, then a specific performance will be refused." In support of the foregoing familiar rule many authorities are cited, several of which are decisions of this court, which fully sustain the note. In no view can appellant maintain a bill for specific performance of this contract.

*Fifth*—Appellee assigns cross-errors upon the ruling of the court in refusing a decree canceling this contract as a cloud upon appellee's title upon the ground that its execution was procured by fraud. The evidence in this record convinces us that the appellee was under a misapprehension as to the character of the sub-soil underlying the LaSalle county farm. The evidence is, that a few inches under the surface the entire farm was underlaid with a hard sandstone. This circumstance destroyed the value of the land, since it could not be tiled and would not grow crops in its present condition. Appellee examined the land by driving and walking over it, but there was nothing on the surface to indicate that the farm was underlaid with rock. There is some evidence tending to show that appellee was plied by appellant with beer on the occasion when the farm was

being examined. Upon these questions the evidence is conflicting. Appellant denies having made any misrepresentations in regard to the character of this land. He also denies that appellee was furnished any beer on the day that the farm was examined. Upon the whole case we do not regard the evidence as so clearly preponderating against the finding below as to require a reversal upon the cross-bill on the facts.

Our conclusion is that the decree of the court below is right. The same is therefore accordingly affirmed.

*Decree affirmed.*