Halla Matthew Carder, Appellee, v. Edna P. Matthew
    Hughett et al. Edna P. Matthew Hughett and
    John Hughett, Appellants.
O. R. Matthew, Appellee, v. Edna P. Matthew Hughett
    et al. Edna P. Matthew Hughett and John
    Hughett, Appellants.

## Gen. No. 7,996.

1. COVENANTS—*when run with land.* A recital in a deed from father
to daughter to the effect that the grantee ''is to pay'' to the grantor,
during his natural life, the sum of $500 per year, and thereafter ''is to
pay'' to two other children of the grantor $200 each per year during
the natural life of each, held to express a covenant on the part of the
grantee to make such payments, which operated as a charge upon the
land upon her acceptance of the grant followed by entrance into pos-
session of the premises.

2. COVENANTS—*when provision construed as, rather than as a condi-
tion.* Where it is doubtful whether a clause in a deed was intended as
a condition subsequent or as a covenant, it will be construed as a cove-
nant, the law favoring such a construction of conveyances as vest es-
tates rather than defeat them.

Appeal by defendants from the Circuit Court of Cass county; the
Hon. GUY R. WILLIAMS, Judge, presiding. Heard in this court at the
April term, 1926. Affirmed. Opinion filed December 29, 1926.

L. P. HARRISS and L. A. CRANSTON, for appellants.

CHARLES A. GRIDLEY, for appellees.

MR. PRESIDING JUSTICE CROW delivered the opinion
of the court.

On May 10, 1910, Rodney H. Matthew, a widower,
owned in fee simple an improved farm of 160 acres in
Cass county and resided thereon with his married
daughter, Edna P. Matthew Hughett, and her hus-
band, the appellant. He owned no other real estate
and no other property except a horse and buggy and

some personal effects. His family then consisted of the appellant, Halla Matthew Jones (now Halla Matthew Carder, an appellee), and his sons, O. R. Matthew, an appellee, and Leonidas Matthew.

On that date the father executed a warranty deed on a statutory form conveying all of his real estate to Edna P. Matthew Hughett for a stated consideration of ''the sum of five hundred dollars, love and affection.'' The deed was acknowledged in due form on the day of its date, and thereafter delivered to the grantee, accepted by her, filed for record and recorded. Immediately following the granting clause, and description of the property, is the following paragraph:

''Edna P. Matthew Hughett is to pay to the grantor, Rodney H. Matthew, Five Hundred ($500) Dollars per year, beginning March 1, 1912, during his natural life, Edna P. Matthew Hughett is to pay Halla Matthew Jones Two Hundred ($200) Dollars per year during her natural life and Edna P. Matthew Hughett is to pay O. R. Matthew Two Hundred ($200) Dollars per year during his natural life, the payments to Halla Matthew Jones and O. R. Matthew to begin at the death of the grantor, Rodney H. Matthew. At the death of Edna P. Matthew Hughett, the above described land is to revert to her heirs.''

At the time of the conveyance the land was worth approximately $25,000. It was the home of the grantor and had been the home of his father before him. The grantee went into possession under the deed, and remained continuously in possession until the death of the grantor, and was in possession at the time of the commencement of this suit. Rodney H. Matthew died March 12, 1922, leaving him surviving the said grantee, appellant, and the other daughter and son, the appellees.

On March 28, 1924, the grantee and her husband executed and delivered a trust deed, conveying all of said

land to the defendant Henry McDonald as trustee, to secure the payment of a principal note in the sum of $5,700 payable one year after date, with 6 per cent interest. On the date due, the time of payment was by agreement extended for a year and two interest notes evidencing the semiannual interest to become due were executed and delivered to the trustee.

On July 22, 1925, appellants executed and delivered to the defendant, the Centennial National Bank, a mortgage deed conveying all of said real estate to secure the payment of a note for $1,000 due one year after date with 6 per cent interest.

Under the provisions contained in the deed there was due to appellees on March 12, 1923, 1924 and 1925, the annual payments therein provided for, which the appellant refused to pay. On September 21, 1925, Halla Matthew Carder (formerly Halla Matthew Jones) and O. R. Matthew filed their respective bills in chancery in the circuit court of Cass county, setting forth the foregoing facts and praying for an accounting, and a decree directing the appellants to pay to the appellees such sum or sums as might be found due, with interest thereon, and, that in default of such payment being made, the said real estate, or so much of it as might be necessary, be sold for the purpose of satisfying said payments, and establishing by decretal order a lien on all of said lands to secure all future payments to become due under the provisions in the said warranty deed, first and prior to all other liens or claims against the grantee, and for general relief.

The appellants and Henry McDonald, trustee, and the Centennial National Bank, filed separate general demurrers to both bills. Afterwards, and before a hearing, the trustee and the bank withdrew their demurrers and filed separate answers to the bills. The causes were then consolidated by agreement of all parties and proceeded as one cause. The general demurrers of the appellants were overruled and the de-

murring defendants, now appellants, abided their demurrer.

Upon hearing on the merits, the decree now complained of was entered, and the demurrants appealed from that portion of the decree only which finds and decrees that the provisions and recitals in said warranty deed constitutes in law a continuing lien on said real estate and finds the amounts due and to become due the said complainants to be a lien thereon, and orders a sale, thereof, for the payment of the amounts due at the time the decree was entered.

The court found that the following sums were due from Mrs. Hughett: To Halla Matthew Carder, three instalments of $200 each with interest from the respective dates each should have been paid, aggregating $657.77; to O. R. Matthew, a like sum including interest; to Henry McDonald, trustee, principal, interest, attorney's fees and insurance paid by him under the terms of the trust deed, $6,115.75. The court found also that the note to the Centennial National Bank for $1,000 was not due. It was found and decreed by the court that the recitals and provisions in the deed constitute a first and continuing lien on all of the real estate conveyed to the grantee for security of the annual payment therein specified, and that the aggregate of each be paid respectively to the parties to whom they were owing, within the time there limited, with interest from the date of the decree until paid, with costs; that in default of payment as decreed, the real estate be sold at public auction for cash by the special master in chancery, subject to the lien thereon of Mrs. Carder and of O. R. Matthew for all future payments falling due them or either of them; that out of the proceeds, he pay the several amounts found due them with costs; that he report his acts, and if the property sell for a greater amount than due, with cost and expenses, he bring the surplus to abide the further order of the court.

While fourteen assignments of error are on the record, only one is presented by the brief of appellants in varying forms, viz:

"The court erred in decreeing that the recitals and provisions in said Warranty Deed constitute a valid, first and continuing lien on all of said real estate for the security of the annual payments on the amount stated therein to be due the complainants."

If, as matter of law and equitable principles, the language of the deeds does not warrant the interpretation given to it by the chancellor, the decree must be reversed. In the argument counsel for appellants contend that there are no expressions in the deed indicating an intention on the part of the grantor to charge the land with the payment of the amounts "requested to be paid to appellees." Before entering upon an examination of the legal effect of the language employed, it is well to notice as a fact that no *request* is contained in the deed. The language is not precatory, but mandatory. Edna P. Matthew Hughett "is to pay" to the grantor during his life $500. She "is to pay" to Halla Matthew Jones, and she "is to pay" to O. R. Matthew, the sums specified, to begin at the death of the grantor. These were annual payments to him during his life, and, beginning at his death, during their lives, as to the others. At her death the land is to "revert to her heirs." While not necessary to a decision of the case, the word "heirs" is a word of purchase under the rule in *Shelley's* case, adding nothing to the legal effect of the granting part of the deed. The statutory form is sufficient for that purpose. Smith-Hurd Statutes, ch. 30, § 9 [Cahill's St. ch. 30, ¶ 9].

The conveyance is effectual as a muniment of title in the grantee by virtue of the express words of the statute. As a mere conveyance, she was not bound to accept it, with or without conditions. If no language were in it other than that the statute declares sufficient

to convey the fee and she had accepted it when delivered to her, she would be the owner, protected by the covenants imputed by the statute. They were inserted at large in the old long form of deeds. When the grantor delivered, and the grantee accepted, the deed, with the recital "Edna P. Matthew Hughett is to pay" the sums'stated, she is charged with notice of the language employed and with knowledge of its meaning and legal effect. She will not be permitted to accept the benefit of the conveyance of land worth $25,000 and reject the burden of paying the sums it recited she "is to pay." (18 C. J. 217, § 128; *Warren v. Jacksonville,* 15 Ill. 236, 241.)

We may not be permitted to assume a fact not shown by proof, but what the experience of men discloses, may be asserted as more than conjecture, indeed as highly probable, that all the terms were agreed upon before the deed was drafted and delivered. The recitals, whether construed as a mandate constituting a condition agreed to by acceptance, or the record of a previous verbal agreement to pay, is as effectual to bind the grantee to the performance of the duty imposed, payment of the sums stated, as if she had signed it.

In *Sanitary Dist. of Chicago v. Chicago Title & Trust Co.,* 278 Ill. 529, 537, the court says: "The acceptance by the grantee of a deed poll conveying an estate in land and containing covenants or agreements to be performed by the grantee, followed by his entering into possession of the premises, binds the grantee to the performance of the covenants or agreements as effectually as if he had signed the deed. (*Dean v. Walker,* 107 Ill. 540; *Schmidt v. Glade,* 126 id. 485; *Sanitary District of Chicago v. Martin,* 227 id. 260; *Druecker v. McLaughlin,* 235 id. 367; *Midland Railway Co. v. Fisher,* 125 Ind. 19; *Sexauer v. Wilson,* 136 Iowa 357; *Burbank v. Pillsbury,* 48 N. H. 475; *Atlantic Dock Co. v. Leavitt,* 50 Barb. 135; 54 N. Y. 35; *Atlanta,*

*Knoxville & Northern Railway Co. v. McKinney,* 124 Ga. 929; *Hickey v. Lake Shore and Michigan Southern Railway Company,* 51 Ohio St. 40.)'' The covenants operate as a charge upon the land, constituting her a trustee for payment. We think the conclusion not in conflict with the principle stated in the argument of counsel for appellants, but in perfect harmony with it. They say it is a general proposition of law that a provision, effect, or purpose is not to be read into the instrument as having been implied, unless necessity therefor is found in the terms used, or purpose expressed therein. There is here nothing implied and by operation of law she is clothed with an obligation to discharge it as part of the consideration for the benefit she received. Looking, as we must, at the circumstances of the parties at the time the instrument was executed, it was manifestly the grantor's intention out of his estate to provide for himself in life and for the two surviving children after his death. She was no more a natural object of the grantor's bounty than were his other two children who are beneficiaries by the terms of the deed.

The conclusion we have stated as to the legal effect of the language of the deed is supported by the decided cases. Appellants do not contend that the language employed is meaningless, but that it expresses a condition subsequent and not a covenant. The case of *Koch v. Streuter,* 232 Ill. 594, is clearly analogous to this. The specific point for decision was as to the legal effect of the clause in a deed as shown by an abstract of title as follows: ''Upon condition that grantee assumes and pays all debts, claims and obligations owing by said Roswell Dow, deceased, with necessary costs of administration of estate.'' It seems that if words alone would create a condition as distinguished from a covenant to perform an act, those quoted would be sufficient. But upon the elementary principle of in-

terpretation of deeds and wills, that if it is doubtful whether the clause is a condition or a covenant, it will be construed as a covenant, the language of the deed was held to be a covenant.

In *Dunne v. Minsor,* 312 Ill. 333, while the court held the clause in question to be a condition subsequent, in reviewing the cases relating to conditions and covenants and the terms that will lead courts to one conclusion or another, said (339):

"In determining whether a clause is a condition subsequent or a covenant, the presence or the absence of a re-entry clause giving that right to the grantor or his heirs, or of the forfeiture of the estate for breach of the condition, has always been considered important. (*Koch v. Streuter, supra; Post v. Weil,* 115 N. Y. 361.) However, it is universally recognized that the intention of the testator is to govern. The usual rule is, that where a conveyance is made upon condition that the grantee shall do a specified completed act, such as pay a specified sum of money or pay the debts of the grantor, such clause creates a covenant rather than a condition subsequent. The fact that the conveyance states the purpose for which it is made or defines the use to which it is to be applied is not ordinarily regarded as creating a condition subsequent subjecting the estate to defeasance in case of breach of such condition." (Citing authorities.)

It was said, also, that if the meaning is doubtful as to whether the clause is a condition or a covenant, it will be construed as a covenant, and for the reason that the law favors the vesting of estates rather than their destruction, and conditions are not, therefore, favored. *Williams v. Vanderbilt,* 145 Ill. 238; *Koch v. Streuter, supra; Board of Education of Normal School District v. Trustees of the First Baptist Church of Normal,* 63 Ill. 204.

The case of *Gallaher v. Herbert,* 117 Ill. 160, arose out of a state of facts very much in all essential par-

ticulars like this. A father executed a warranty deed conveying to his son a tract of land for the express consideration of love and affection, and the payment by the grantee to him, of the sum of $200 per year during his life. A further consideration expressed was that the son waived, released and relinquished, to the grantor, all rights he might have in other property as a son and heir of the grantor. The grantee did not pay the stipulated sums. As in this case, he afterwards, executed a mortgage on the land. There were several judgments against him, the property having been sold under an execution issued on one of the judgments. The grantor filed a bill to cancel the deed, to set aside the mortgage as a cloud on his title, for award of possession, and for general relief. The defense of the mortgagee and judgment creditors was collusion to defraud them, the mortgagee filing a cross-bill to foreclose his mortgage. The circuit court held the mortgage and several judgments fraudulent as to complainant, decreed that the cross-bill be dismissed and that the conveyance by him to his son be set aside. The judgment creditors appealed.

The Supreme Court reversed the decree and remanded the cause with directions to the circuit court to enter a decree in favor of the complainant against the land in controversy for the unpaid instalments, with interest from the time they were severally due, and that the payments thereafter annually due during the life of complainant be a lien on the land conveyed by him; and that in default of payment of such sums, the master in chancery sell the land; and that all interests and claims of appellants in the land were junior and subordinate to the lien of complainant. That direction as to decree is like the decree in this case.

The decree of the circuit court was in accord with the bill, but was not adequate, and did not conform to the demands of equitable relief warranted by the facts. The only express stipulation contained in it on

the part of the grantee was that he waived and relinquished an interest in his father's estate as son and heir of the grantor. Reversing the decree, Mr. Justice Scholfield, *inter alia,* said:

"In the construction of deeds, courts will always incline to interpret the language as a covenant, rather than as a condition. *Board of Education v. Trustees,* 63 Ill. 204.

"There is nothing in the form of the language here employed to indicate that it was intended the conveyance was upon a condition subsequent. The words, 'upon condition,' do not occur, and there are no other words of equivalent meaning. There is no clause providing that the grantor shall re-enter in any event, and these are the usual indications of an intent to create a condition subsequent. Sheppard's Touchstone (6th ed.) 118. The rule is, a court of equity will never lend its *aid* to divest an estate for breach of condition subsequent. 4 Kent's Com. (8th ed.) 134, *130. But where compensation can be made in money, courts of equity will relieve against such forfeitures, and compel the party to accept a reasonable compensation in money. 2 Story's Eq. Jur. secs. 13, 15, *et seq.*

"The language here is reasonably susceptible of the construction that the parties only intended to secure the payment of the $200 during the lifetime of the grantor, and it is clear that much was intended. That was the only pecuniary interest the grantor had in the question of whether the land should be alienated or not during his lifetime. If alienated, the grantee might not be able to pay the $200 per annum; but if it could not be alienated during his lifetime, it was ample security for the payment of the $200. The duty to pay the $200, and the inability to alienate, go together. It accomplishes the same result, does injustice to no one, and is more in harmony with the general rules governing the alienation of real property to hold that the grantor here retained a lien on this land for the pay-

ment of the $200 annually, on the first day of March, during his lifetime. The appellants took whatever rights they may have, with notice, by the record of the deed, of all the reservations in favor of the appellee, * * * the wrong of the grantee is in not doing what he obligated himself to do by accepting the deed.''

So much of the language of that great judge is quoted because after his own manner he went to the root of the controversy which was more favorable to the grantor than to the appellants in this case. It is said in the argument of appellant that for 12 years she paid $500 a year to her father. But she had obligated herself to make those payments by accepting the deed. She knew it was her duty to make the payments. She is bound as firmly by the same instrument to make the payments to the appellees now seeking relief. In the case last cited, the grantor was demanding the aid of a court of equity to revest him with the title to the property because the payments were not made as provided. In this the grantee is insisting that the language of the deed constitutes a condition subsequent, and not a covenant, which would be a declaration that the title in her fails because she did not perform it. The circuit court properly refused so to hold. If it had adopted that construction of the conveyance, she and the other heirs would become the beneficiaries of it. She would have a share worth eight or nine thousand dollars, mortgaged well up to its value, in property worth $25,000. Having paid the amounts due during her father's lifetime, it is not unjust to her to assume she knew the law, and that she recognized her obligation to pay according to her covenant. The land is in her name impressed with a trust. Everyone taking a conveyance from her does so with full knowledge that as long as her brother and sister live her interest is burdened with a trust by virtue of the covenant attaching to the title. She is a trustee and appellees are

entitled to have the land, or so much of it as is necessary, sold to satisfy their claims. All persons, through whatsoever conveyance claiming, hold subordinate claims.

It is contended by appellant that the decree does not conform to the bill. It affords the relief that the facts averred and admitted by demurrer require for complete justice. While appellant seems to find fault with the decree as to relief granted to Henry McDonald, trustee, he is not complaining, his trust deed having been correctly declared subordinate to the claims of Mrs. Carder and O. R. Matthew. It is of no concern to her that the trustee or the mortgagee have no relief as to the mortgages she executed to them. The beneficiaries of her covenant have rights superior to her or her grantee, whether in fee or in mortgage. She must pay all the obligations, they being hers, and as security for payment, the decree marshals them in the order the principles of equity require. The mortgagees or purchasers at a mortgage sale, or by assignment, take subject to the rights of the covenantees, in which they cannot be supplanted.

The decree of the circuit court is right and it is affirmed.

*Affirmed.*