CHARLES W. PHILLIPS *et al.* Appellants, *vs.* THOMAS L. GANNON *et al.* Appellees.

*Opinion filed June 29, 1910—Rehearing denied October 12, 1910.*

1. DEEDS—*there are no technical words to distinguish between condition precedent and condition subsequent.* There are no technical words to distinguish between a condition precedent and a condition subsequent, but the distinction is a matter of construction, depending upon the connection in which the words are used, and 'in case of doubt the courts prefer to construe conditions as subsequent rather than precedent, so as to give a present estate subject to being divested, rather than to defer the vesting.

2. SAME—*when condition is a subsequent one.* If the act or condition required does not necessarily precede the vesting of the estate but may accompany or follow it, and if the act may as well be done after as before the vesting of the estate, or if, from the nature of the act and the time required for its performance, it is evident that the intention of the parties was that the estate should vest and the grantee perform the act after taking possession, the condition is subsequent.

3. SAME—*provision for re-entry usually indicates a condition subsequent.* A provision in a deed for re-entry in case of a breach of conditions usually indicates an intention to create a condition subsequent, and while not indispensable, it is always important as evidence of an intention to impose such a condition.

4. SAME—*when deed may be given effect as a present grant of future interest.* If a deed has been actually delivered to the grantee in the lifetime of the grantor, even though it provides that it is not to take effect until the grantor's death, it will be sustained as a present grant of future interests.

5. SAME—*designating condition as a "condition precedent" is not conclusive.* The fact that a deed recites that "the performance of said covenants is hereby made a condition precedent to the vesting of the title of said premises" is not necessarily conclusive that the performance of the covenants shall be a condition

precedent to the vesting of the title, where the acts of the parties and the nature of the covenants show an intention to vest the title at once, subject to being divested by a breach of the covenants.

6. HOMESTEAD—*homestead estate is extinguished if abandoned in pursuance of deed.* A release of homestead in a deed is not essential to the extinguishment of the estate if the grantor surrenders possession to the grantees in pursuance of the conveyance.

7. PLEADING—*parties cannot control construction of a written instrument by admissions of law.* Where a bill for partition sets out a deed *in hæc verba*, the determination of the legal effect of the deed is a question of law for the court, and such determination cannot be influenced by any conclusions of law averred by the parties in the pleadings.

VICKERS, C. J., dissenting.

APPEAL from the Circuit Court of Hancock county; the Hon. ROBERT J. GRIER, Judge, presiding.

CHARLES J. SCOFIELD, and J. PAUL CALIFF, for appellants.

O'HARRA & O'HARRA, HARTZELL & McCRORY, and D. E. MACK, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a bill filed in the circuit court of Hancock county for the partition of certain lands in said county, or for the partition of a homestead estate therein in case a certain deed to said lands be held otherwise valid. The bill was amended and a supplemental bill thereafter filed by leave of court. Appellees answered the bill, also the amended and supplemental bills. After hearing, the court dismissed the bills for want of equity, and from that decree this appeal was prayed.

April 7, 1897, John W. Phillips was the owner of two tracts of land in Hancock county, one of forty and the other of five acres. He and his wife had resided on the larger tract for a long time previous to her death, about 1893, and for several years thereafter he lived there with

various of his unmarried sons. Shortly before April, 1897, being then about eighty years of age, he became desirous of making arrangements with someone to support and care for him during the remainder of his life in return for a deed of the real estate, and he endeavored to make an arrangement of that nature with Edward Huey, son of a neighbor, but without success. He then made such a proposition to his grandson, Thomas L. Gannon, and the latter's wife, Annie Gannon, appellees herein, and they accepted. Phillips and Gannon thereupon went to the county seat, Carthage, accompanied by a neighbor, who went at Phillips' request, and the deed in question was prepared by a lawyer according to directions given him by Phillips and was signed by Phillips and Gannon. Thereafter Annie Gannon signed, and the following day all three acknowledged the deed before Douglas Aleshire, a justice of the peace who lived in the vicinity of the farm, and it was recorded. The instrument in question reads as follows:

"This indenture, made and entered into this seventh day of April, A. D. 1897, by and between John W. Phillips, party of the first part, and Thomas L. Gannon and Annie Gannon, his wife, party of the second part: Witnesseth, that said John W. Phillips, party of the first part, for the consideration hereinafter specified and upon the condition hereinafter mentioned, sells and conveys to the said party of the second part, their heirs and assigns forever, the following described premises, to-wit: [describing them.] And the said Thomas L. Gannon and Annie Gannon, his wife, parties of the second part, in consideration of the premises and of the conveyance to them of the said lands, hereby covenant, promise and agree to and with said John W. Phillips, party of the first part, that they will, at their own expense, severally furnish to said John W. Phillips a comfortable support, consisting of food, shelter and clothing, and kind treatment, and all proper, necessary medical assistance and treatment, during his natural life, and give

him a decent burial and a suitable monument to mark his grave after his death, and that they will fully pay and discharge a certain encumbrance, by mortgage, on said premises made by said party of the first part, and that the said John W. Phillips, party of the first part, shall have the right to re-enter and take possession of said premises for a breach of any or either of the above covenants, promises or agreements, and to eject the said party of the second...., or any person or persons holding under them, therefrom, and to have, hold and enjoy said premises as though this conveyance had not been made; and the performance of said covenants is hereby made a condition precedent to the vesting of the title of said premises in said parties of the second part." (Then follow the signatures and seals of the three parties and the acknowledgment.)

About this time John W. Phillips went to live with the Gannons on the farm they were renting in the vicinity. While there is some conflict on the point, we think the great weight of the evidence shows that he went to live with them after, and not before, the instrument in question was executed. For some two years the three continued to live on the farm where the Gannons were residing at the time this deed was made, and the Gannons rented out the forty-acre tract here in question to third parties. Thereafter the Gannons and Phillips moved onto the forty-acre tract, where they continued to reside until Phillips' death, July 30, 1907, and the Gannons were residing there at the time of the hearing in this cause. The evidence shows, without serious controversy, that during all of this time, from the date of the execution of the instrument until Phillips' death, the Gannons furnished him with good food, clothing, care and shelter. The testimony of a number of witnesses was to the effect that Phillips was pleased with the arrangement he had made and frequently said the Gannons were good to him,—"too good," as he put it,—that is, that they took more care for his comfort than he thought

was necessary. The doctor who attended Phillips from 1899 until his death testified that he was employed by the Gannons to do so, and that they gave Phillips a good home and all the attention a man of his age required; that from April, 1907, until Phillips' death, in July of that year, he (the doctor) attended Phillips every two or three days, and before that, six or eight times a year. The evidence also shows that the Gannons paid off the mortgage referred to in the deed, amounting to $425, and that they provided and paid for a decent burial of Phillips. It appears that before the deed was executed Phillips had erected a monument on his family lot, and that he said, when the deed was being prepared, that the provision with reference to the monument was unnecessary. The testimony shows that the Gannons caused a proper inscription as to Phillips to be placed on the monument after his death and a "marker" at his grave. On this record there can be no doubt that the appellees carried out all their agreements as required by the deed.

John W. Phillips died intestate and left no widow, but left seven children and certain children of deceased children, of which grandchildren Thomas L. Gannon is one. The appellants here are some of the heirs-at-law, all the heirs having been parties, either plaintiffs or defendants, to the original proceeding. The bill charges that Phillips, at the time he made the instrument in question, was of unsound mind and not competent to transact ordinary business, and was subject to undue influence on the part of the Gannons. It is not claimed that there is any evidence in the record that substantiates in any degree the charge of undue influence, and we do not think that the evidence supports the allegations as to mental incapacity. The alleged declarations of Thomas L. Gannon as to the mental condition of the grantor in the deed, made at about the time of its execution, were properly excluded by the trial court, as they were not made in the presence of Annie

Gannon, who was also a party to the deed.    Furthermore, had these alleged declarations been admitted, we cannot see how they could have changed the conclusion that must be reached on this record, that Phillips had sufficient mental capacity to execute this instrument.

The chief contention of appellants, however, is, that the conditions upon which the title under this deed was to vest in appellees were conditions precedent, and that as certain of these could not be performed until after the death of Phillips, the deed, by its terms, must be held void, as an attempt to make a testamentary disposition of property without complying with the Statute of Wills. A condition in a deed is a qualification of the estate granted and may be either precedent or subsequent. (1 Jones on Real Property, sec. 619; 6 Am. & Eng. Ency. of Law,—2d ed.— p. 500.) "Precedent are such as must happen or be performed before the estate can vest or be enlarged; subsequent are such by the failure or non-performance of which an estate already vested may be defeated." (2 Blackstone's Com. *154; 5 Viner's Abr. 75.) The distinction between conditions precedent and subsequent is obvious in its consequences, (1 Tiffany on Real Property, sec. 69,) but it is not always easy to determine which of such conditions the words of a particular devise or conveyance create. (2 Washburn on Real Property,—6th ed.—sec. 941.) There are no technical words to distinguish between them. The distinction is a matter of construction. (4 Kent's Com.—14th ed.—*125; *Burdis* v. *Burdis,* 70 Am. St. Rep. 825, and note; 3 Greenleaf's Cruise on Real Estate, *354.) The same words have been construed differently, depending on the connection in which used. (*Finlay* v. *King's Lessees,* 3 Pet. 346; *Creswell* v. *Lawson,* 7 G. & J. 227.) If the act or condition required does not necessarily precede the vesting of the estate but may accompany or follow it, and if the act may be as well done after as before the vesting of the estate, or if, from the nature of the act

to be performed and the time required for its performance, it is evident that the intention of the parties was that the estate should vest and the grantee perform the act or acts after taking possession, then the condition is subsequent. (*City of Chicago* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 73; 2 Washburn on Real Property,—6th ed.—sec. 941; *Underhill* v. *Saratoga and Washington Railroad Co.* 20 Barb. 455, and cases cited; 13 Cyc. 691.) When the words are of doubtful meaning, the courts prefer to contrue the conditions as conditions subsequent rather than precedent, (*In re Stickney's Will,* 85 Md. 79; 2 Washburn on Real Property,—6th ed.—sec. 941;) so as to give a present estate liable to be divested rather than to defer the vesting. (1 Tiffany on Real Property, sec. 69, and cases cited.) The whole instrument must be construed together. (*Riggin* v. *Love,* 72 Ill. 553; *Jones* v. *Chesapeake and Ohio Railroad Co.* 14 W. Va. 514; *Donnelly* v. *Eastes,* 69 N. W. Rep. 157.) A provision in the deed for re-entry in case of a breach of conditions usually indicates an intention to create a condition subsequent, (*Koch* v. *Streuter,* 232 Ill. 594; *Star Brewery Co.* v. *Primas,* 163 id. 652;) and while not indispensable, it is always important as evidence of an intention to impose such a condition. *Druecker* v. *McLaughlin,* 235 Ill. 367.

While the intention of the parties in any given case is shown by the instrument and the facts surrounding its execution, and not by the technical words used, still a reference to decided cases throws light on the application of the foregoing rules of law to the special facts of each case. The reasoning in the following authorities tends strongly to support the conclusion that this instrument created a condition subsequent and not a condition precedent: *Shum* v. *Claghorn,* 69 Vt. 45; *Birmingham* v. *Lesan,* 77 Me. 494; *Rogan* v. *Walker,* 1 Wis. 527; *Drew* v. *Baldwin,* 48 id. 529; *Gall* v. *Gall,* 126 id. 390; *Donnelly* v. *Eastes, supra; Gilchrist* v. *Foxen,* 70 N. W. Rep. 585; *Chute* v. *Wash-*

*burn,* 46 id. 555; *Childs* v. *Rue,* 84 Minn. 323; *Rannels* v. *Rowe,* 145 Fed. Rep. 296.

Many of the Illinois cases cited by appellants to support their contention that this instrument was, in effect, an attempt to make a testamentary disposition of property, were those in which it was decided that there was no delivery of the deed prior to the death of the grantor. In the case at bar ·it is conceded that the deed was delivered and recorded at or about the time it was executed. Where a deed has been actually delivered to the grantee in the lifetime of the grantor, even though it provides that it is not to take effect until after the grantor's death, it will be sustained as a present grant of future interests. (*White* v. *Willard,* 232 Ill. 464; *Potter* v. *Barringer,* 236 id. 224, and cases there cited.) In *Bowler* v. *Bowler,* 176 Ill. 541, it was held that a deed, duly executed and delivered, which stated that the grantors remised, released and quit-claimed to the grantee and his heirs after the death of the grantor, was a present grant of a future estate, even though there was a provision in the deed that the intention was "to give the said parties of the first part possession and control of the said real estate during the lifetime of the said William P. Bowler, and the title to the same is not to vest in the said William H. Bowler, his heirs and assigns, until after the death of said William P. Bowler." The court there said that the grantor, in using the word "vest," did not use it in its technical sense; that to hold that the grantor did not intend to pass a present interest in the remainder would be equivalent to holding his act in executing the instrument a nullity. In *Venters* v. *Wickens,* 224 Ill. 569, this court held that a deed conveying to a grantor's grandson a farm in which the grantor reserved for himself and wife a life estate, the grantee to live with and care for the grantor and his wife and the title to vest absolutely in the grantee at the death of the grantor "but not before," was not a testamentary instrument but a deed vesting title in

the grantee subject to the life estate; that the word "vest" was not used in its technical sense.

Appellants admit that under this instrument the Gannons were to enter immediately into possession of the land and to retain such possession and have the use of the land during the life of Phillips unless some of the conditions in said deed were broken, but they argue that this was only "a temporary use" or possession. This, it seems to us, is a distinction without any difference,—little more than a play on words. A condition subsequent is plainly implied from this right of possession and use. Until a condition was broken there was no right to re-enter. The reservation of the right to re-enter implies that the grantees had been previously invested with possession and title. The acts or conditions imposed upon appellees by this instrument were intended to accompany or follow the vesting of the estate, and this, under all the authorities, clearly implies a condition subsequent rather than precedent. The conduct of all the parties to this instrument shows conclusively that these conditions were construed by them as subsequent and not precedent. The five-acre tract was sold, all three signing the deed. The evidence does not show what became of the proceeds, but it is evident that they were used satisfactorily to Phillips and appellees.

But it is insisted that the conditions were precedent rather than subsequent because of the clause found in the last part of the instrument, which reads, "the performance of said covenants is hereby made a condition precedent to the vesting of the title of said premises," etc., especially the use of the words "condition precedent" and "vesting." The authorities all agree that no particular words can distinguish a condition precedent from a condition subsequent. The word "vesting" is evidently not used here in its technical sense. Construing this clause in the light of the surrounding circumstances and in connection with the entire instrument, it was clearly intended to mean that the title

should vest at once, but that the grantees should not have an absolute, indefeasible title until they had performed all of·the conditions set out in the instrument. This construction is in accordance with that placed upon very similar language in *Bowler* v. *Bowler, supra, Venters* v. *Wickens, supra, Drew* v. *Baldwin, supra,* and *Donnelly* v. *Eastes, supra.* To construe the clause in question as contended for by appellants would render this instrument a nullity. This the law will not permit if it can be avoided without doing violence to well established rules. *Bowler* v. *Bowler, supra.*

In this connection counsel argue that it must follow because some of these conditions could not be performed until after the death of the grantor that they were precedent and not subsequent. Such is not the law. (1 Jones on Real·Property, sec. 921, and authorities heretofore cited.) It has frequently been held that the decision of a question of this character does not depend .so much upon artificial rules of construction as it does upon the application of good sense and sound equity to the spirit of the contract in a given case. (4 Kent's Com.—14th ed.—*133; *Druecker* v. *McLaughlin, supra.*) Manifestly, not only good sense and sound equity but the intention of the parties to this instrument require that it be held that the conditions therein contained were conditions subsequent rather than precedent, and that the title to the real estate in question vested on the delivery of the deed, subject to divestiture if its conditions were broken.

It is further contended by appellants that as the deed did not mention the homestead it was inoperative to convey that estate, leaving it in the grantor precisely as though the instrument had never been executed. The statute as to homestead exemption provides that the homestead shall not be released or waived unless in writing, "or possession is abandoned or given pursuant to the conveyance." (Hurd's Stat. 1908, sec. 4, p. 1068.) In *Coon* v. *Wilson,* 222 Ill. 633, after reviewing many of the authorities cited

and relied on by appellants, this court stated (p. 637) : "In our judgment possession is 'given pursuant to the conveyance' when it is given by reason or on account of the conveyance having been made, and not by reason or on account of some other circumstance." Manifestly, from this record Phillips, after executing the instrument in question, gave up possession of his homestead to appellees solely by reason and on account of that instrument and the conditions therein contained, and not for any other reason or circumstance. Possession of the homestead estate was therefore given pursuant to the conveyance.

Counsel for appellants further suggest that appellees in their answer admit that the title did not vest until after the death of the grantor. Whatever might have been the contention on this point before the answer was filed to the amended and supplemental bill, we do not think this contention can fairly be upheld as to the amended pleadings. Furthermore, such an admission in the answer of appellees would be a conclusion of law and mere surplusage. (*Barnes* v. *Northern Trust Co.* 169 Ill. 112; 1 Daniell's Ch. Pr.—6th Am. ed.—*713.) The instrument to be construed was set out in the pleadings *in hæc verba.* It is for the court, therefore, to determine its legal effect, and that determination cannot be influenced by any averment made as a matter of conclusion of the pleader. *Binz* v. *Tyler,* 79 Ill. 248; *Massachusetts Mutual Life Ins. Co.* v. *Kellogg,* 82 id. 614.

Various other questions have been argued in the briefs, which we deem it unnecessary to consider in view of the conclusions we have already reached.

The circuit court properly dismissed the bill, and the decree of that court must be affirmed.

*Decree affirmed.*

Mr. CHIEF JUSTICE VICKERS, dissenting.