(No. 28031.—

THE PURE OIL COMPANY *et al., vs.* PEARLEY BAYLER *et al.,* Appellants.—(EUGENE D. STANFORD *et al.,* Appellees.)

*Opinion filed November 22, 1944.*

332

SMITH, J., took no part.

EMORY E. CALHOUN, of LOUISVILLE, PAUL TAYLOR, of Effingham, A. D. MOODY, of Aledo; F. E. MERRILLS, of Belleville, A. E. BUTTERFIELD, and A. J. McMAHAN, both of Olney, for appellants.

CREIGHTON & KERR, of Fairfield, RALPH G. MEYER, of Flora, and DONOVAN D. McCARTY, of Olney, for appellees.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

While this is a proceeding under "An Act in relation to oil and gas interests in land," (Ill. Rev. Stat. 1941, chap. 104, pars. 25 to 33,) the real issues involve questions of title to 20 acres of unimproved land in Clay county, Illinois, where oil has been discovered and is being marketed by the Pure Oil Company under leases from all interested parties. In this case the original complaint was filed by the Pure Oil Company holding oil leases from all the parties claiming an interest in the lands in controversy. It represented that there was a dispute as to the ownership of the one-eighth royalty. By an order of court the royalty has been impounded awaiting the outcome of the suit and all claimants thereto ordered to file claims. The circuit court found the entire title to the land, and consequently the right to the proceeds of the one-eighth reserved royalty of oil and gas, is vested in various proportions among seven certain parties to the suit, who, with the spouses of five that are married, will hereinafter be referred to as appellees. Accordingly, this appeal was taken by the remaining 17 parties to the suit, hereinafter referred to as appellants, who contend that they should be decreed a part of the fee title and their resulting proportionate share of the impounded monies arising from sales of oil already produced, and which may be produced in the future. Inasmuch as a freehold is thus involved, the appeal comes directly to this court.

The source of this dispute lies in a certain deed executed February 24, 1916. For the purpose of this suit, we may begin with the proposition that on that date Henry Gray owned the fee-simple title to the land in question which is described as: "The North half of the North East quarter South West quarter of Section Ten (10), Town two (2), Range Seven (7) East." Being of advanced years, in failing health and without children, he, together

with his wife, Annie F. Gray, then and there signed and acknowledged a printed form of statutory warranty deed, the material parts of which were as follows (the printed parts of the deed being in standard type while the italics represent the filled-in portions written with ink) :

"The GRANTOR, *Henry Gray and Annie F. Gray*

*husband and wife*

of the County of *Clay* and State of Illinois, for and in considera-

tion of the sum of *Making provisions for each & one* *support & maintainance* DOLLARS,

in hand paid, CONVEY and WARRANT to *the survivor in Fee*

*Simple forever survivor to dispose of they*

*shall see fit to do* the following described Real Estate :"

After this, was a description of the 20 acres in question, together with other real estate not involved herein, the signatures of the grantors, and the acknowledgment by the notary public. Said deed was duly recorded on the day following its execution, and four days thereafter Henry Gray died intestate survived by his said wife and his two sisters, Essie G. Davis and Emma G. Bayler, as his only heirs-at-law. Up to this point the parties are in accord, but as to the legal effects of the above-quoted portions of the deed and subsequent events, there is a sharp conflict between counsel.

On behalf of appellees, it was proved that soon after the death of Henry Gray letters of administration were duly issued to his widow, and the inventory filed by her relative to the land in question contained the following statement: "All real estate owned by deceased reverted to Annie Gray at Henry Gray's death by deed of record." The estate was closed in March, 1917, and taxes on the land in question were paid by, or in the name of, Annie F. Gray, regularly, until her death, intestate, on October 5,

1921. The record further indicates that at least one incident of ownership over the land in question was exercised by Annie F. Gray from the period of 1916 to 1921 in that during that period she occasionally had, or permitted timber to be, removed therefrom.

Although the estate of Annie F. Gray was not probated, it does not appear to be disputed that her only heirs were her mother, Eliza J. Monroe, and a sister, Minnie A. Lee. The latter soon quitclaimed all her interests in the premises to said Eliza J. Monroe who, appellees claim, executed a deed in September, 1923, to one Alvin Stanford. For some reason, this alleged deed of 1923 was lost but the record contains evidence adduced by appellees to the effect that Alvin Stanford thereafter exercised some incidents of ownership over said land, such as occasionally cutting timber, making fence posts and removing firewood, building a small amount of fence, farming a few acres (the remainder of the land being covered by woods,) and payment of taxes down to the time of his death, in 1936. Upon discovering that the deed of 1923 had been lost or destroyed, he secured a new deed from Eliza J. Monroe and her husband, which was dated April 23, 1932, but was not recorded until discovered among his papers in December, 1941. In the meantime, on, to-wit, April 14, 1936, Alvin Stanford executed an oil and gas lease to one R. Z. McGowan, covering the entire 20 acres but reserving the usual one-eighth royalty. On March 18, 1937, McGowan assigned that lease to Pure Oil Company which subsequently discovered and marketed oil, as above stated.

Title to the 20 acres is then alleged by appellees to have passed from Alvin Stanford, by his duly executed and probated will, to Elias Stanford. The latter paid taxes for two years and on December 18, 1937, executed and delivered a deed to the premises to Roy Stanford and Amy Davis as equal tenants in common, who claimed to be the owners at the time of filing suit herein on December 1,

1941. In the same month that Roy Stanford and Amy Davis received title as aforesaid, they executed a mineral deed to one half of the oil and gas under the premises to Eugene D. Stanford, Mary Stanford Ehler, Andrew Stanford and Elias Stanford. In November, 1941, Amy Davis executed a further mineral deed conveying a one-eighth interest to R. S. Jones, but because of this litigation that mineral deed and payment therefor are now being held in escrow.

Through the foregoing chain of conveyances and transfers, appellees Roy Stanford and Amy Davis contend that they each own an undivided one-half interest in the fee to the 20 acres of land involved, and the trial court so found. For the same reasons, appellees contend, and the trial court found, that they own and are entitled to the proceeds of the one-eighth reserved royalty in the following proportions: Roy Stanford one fourth, Amy Davis one eighth, Eugene D. Stanford one eighth, Mary Stanford Ehler one eighth, Andrew Stanford one eighth, Elias Stanford one eighth, and R. S. Jones one eighth. The appellees also allege in their pleadings, and contend here, that if the foregoing deeds and transfers do not provide legal support for their claims, then they nevertheless own the same interests decreed by the trial court on the basis of open, continuous, adverse possession for 20 years, or possession under color of title and payment of taxes for 7 years as provided by sections 1 and 6, respectively, of our limitations statute. (Ill. Rev. Stat. 1941, chap. 83, pars. 1 and 6.) (They likewise contend that by limitations and *laches* the appellants are estopped from asserting any interest in the premises.) The trial court did not pass upon these questions of limitations but based its decree on the theory that Annie F. Gray became vested with the fee-simple title as the survivor under the deed of February 24, 1916, after which title descended and was conveyed, as already explained.

Opposed to these contentions, appellants urge these alternate propositions: (1) that said deed of February 24, 1916, was entirely void and of no force and effect, whereby Henry Gray died seized of the whole title, and, in the absence of children, his wife inherited an undivided one-half interest (which descended and went to appellees by the same chain of title above set forth) but that certain of the appellants inherited the remaining undivided one-half by descent from Henry Gray; or (2) that if said deed of February 24, 1916, is not void, it, at most, conveyed an undivided one-half interest to Annie F. Gray as a tenant in common whereby the same appellants would be entitled to an undivided one-fourth interest by descent from said Henry Gray.

If either of the appellants' contentions is correct then there would be no dispute that they have certain interests as descendants of Henry Gray, because this is, of course, a simple matter of heirship, to-wit: It will be recalled that Henry Gray left no children but was survived by his wife, Annie F. Gray, and his two sisters, Essie G. Davis and Emma G. Bayler, as his only heirs-at-law. On appellants' side of the family tree, Essie G. Davis died intestate in 1937, leaving a daughter, Clemitena D. Delgar, who is still alive, and Harry D. Davis who died intestate in 1938. The latter was survived by a widow and six children who were likewise alive at the time this suit was instituted. The other sister, Emma G. Bayler, died intestate in 1928 and was survived by her husband and three children who are also alive so far as this record shows. Those twelve descendants and heirs-at-law of Essie G. Davis and Emma G. Bayler, and the spouses of four who are married, are the appellants in this case, together with the duly appointed guardian of three of the children of Harry D. Davis, who are minors. Apparently when discovery of oil became imminent, an examination of the abstract of title to the premises in question disclosed the possibility of the in-

terests of appellants, and, accordingly, the Pure Oil Company likewise obtained oil and gas leases from all of them in 1941 and 1942, under which the usual one-eighth royalty was reserved. Prior to that time there had been no suit or formal demands by any appellants claiming an interest in the land in question.

To sustain their first proposition, *i.e.*, that the deed of February 24, 1916, was entirely void, appellants cite a host of cases, such as *Herrick* v. *Lain*, 375 Ill. 569, and *Mickey* v. *Barton*, 194 Ill. 446, to the effect that a deed must have a grantee *in esse* in whom title can and must immediately vest; in other words, a deed in which no immediately determinable grantee is named is void. As an abstract proposition of law, we concur therewith. However, that rule does not call for the conclusion here urged, nor are the supporting cases applicable to the situation here presented. To have a valid deed, certain formal requirements must be met, but when we are once presented with a written instrument purporting to convey real estate, the primary rule to be followed is to ascertain the real intention of the parties, unless, as was said in *Anderson* v. *Stewart*, 285 Ill. 605, "such intention is in conflict with some unbending canon of construction or settled rule of property or is repugnant to the terms of the grant." Or, as stated in *Woods* v. *Seymour*, 350 Ill. 493: "It is a fundamental rule in the construction of deeds that the intention of a grantor, as gathered from a consideration of the whole instrument, will be given effect where not contrary to some positive rule of law." As a part of the same principle, it was further stated in *Texas Co.* v. *O'Meara*, 377 Ill. 144: "* * * we must consider the circumstances and so far as possible place ourselves in the situation of the parties to the deeds which we are considering and construing. We must consider the objects which they wished to attain and the objects which they had in mind, as shown by the deed, as well as those which they did not have in mind

and could not attain." This rule of intention applies to the ascertainment of the grantee if his identity is made certain by the instrument as a whole, even though he is not specifically named or is inaccurately described. (*Northwestern Distilling Co.* v. *Brant,* 69 Ill. 658; *Church of Christ* v. *Christian Church,* 193 Ill. 144; 18 Corpus Juris, p. 174, par. 56.) In *Henry* v. *Metz,* 382 Ill. 297, we said: "In the construction of deeds, wills, contracts and other instruments in writing, the courts seek to ascertain the intention of the parties, and the intention, when found, will be given effect if it is consistent with the language used and with the law and with public policy. * * * In construing a deed, effect must be given to each clause or term employed by the parties, rejecting none as meaningless or surplusage."

In the light of these maxims, we believe it is apparent that the deed of February 24, 1916, in fact had a grantee. On that date Henry Gray and his wife were childless, he was ill and he died five days later. It cannot be supposed that he intended to do a useless thing by calling in a notary public and having the deed prepared. Although the manner of expressing a consideration was rather unusual, the purpose was as old as marriage itself—"Making provisions for support & maintenance each & one DOLLARS." When we remember the situation of the parties and the fact that theirs are the only names appearing in the body of the deed, it is obvious that they intended to make a transfer to no other person or persons. Thus, they conveyed and warranted "to the survivor in Fee Simple forever survivor to dispose of they shall see fit to do." The word "survivor" means "one who outlives another" and should receive its normal meaning with reference to the context of the instrument wherein used. So far as this phase of our discussion is concerned, it is as though the deed read "to Henry Gray and Annie F. Gray, the survivor to have title in fee simple" or "to Annie F. Gray

in fee simple if she survives Henry Gray," instead of as just above literally quoted. By so construing the deed, we are adding nothing of any legal significance but rather are arriving at the intention of the parties, which must be evident to any reasonable-minded person. Although Henry Gray could not convey to himself that which he already owned, his literal attempt to do so would not vitiate the deed where there was a grantee capable of taking title,— his wife,—and certainly it cannot be disputed that one spouse may convey to the other just as strangers. See *Brown* v. *Brown,* 247 Ill. 528, and *Hathaway* v. *Cook,* 258 Ill. 92.

The entire validity of this deed is further attacked by appellants on the theory that no title passes where it is the intention of the parties that the deed shall not become effective unless the grantor shall die before the grantee. In support thereof, they cite *Benner* v. *Bailey,* 234 Ill. 79; *Elliott* v. *Murray,* 225 Ill. 107, and other cases, which, on their face, do so hold. However, again, such citations are not in point here. Those involved situations where this court held, under the particular facts, that the deeds were not legally delivered, either in escrow or directly, to the grantees. Appellants' briefs do not direct our attention to a single allegation in their pleadings which challenges the delivery of this deed, nor do we find any such averment upon our own inspection of the record, or any evidence whatever pertaining thereto except the filing marks on the back of the deed, indicating that it was recorded in a certain book and page on February 25, 1916, which was the day after its execution. Under such circumstances, the following rule, stated in *Campbell* v. *Campbell,* 368 Ill. 202, must be applied: "A deed, executed, acknowledged and recorded, is presumed to have been delivered. (*Reed* v. *Douthit,* 62 Ill. 348; *Harshbarger* v. *Carroll,* 163 id. 636; *Standard Trust and Savings Bank* v. *Carlson,* 315 id. 451.) Whoever questions the fact of delivery under such

circumstances must assume the burden of overcoming the presumption by clear and convincing evidence."

Aside from such a presumption of delivery, that factor is normally one of intention, and, from the facts already related, we believe it is apparent that immediate and unqualified delivery was intended, as it was not made conditional either by wording of the instrument or acts of the parties. It follows, therefore, that the well-established rule of such cases as *Hathaway* v. *Cook,* 258 Ill. 92, provides the final answer to this phase of appellants' contention. In that case Ann Jane Cook, as the owner of certain land, executed and delivered to her husband a quitclaim deed which provided, "It being understood that this deed is to go into effect upon the death of the grantor, Ann Jane Cook." The deed was promptly recorded and many years later the grantor died, following which her husband soon died. The respective heirs and devisees of each party claimed title to the land and in the resulting lawsuit it was urged that the deed was never legally delivered but was intended by the grantor to be only in the nature of a testamentary disposition and, therefore, void. In holding to the contrary, we said: "Where a deed has been actually delivered to the grantee in the lifetime of the grantor, even though it contains a provision that it is not to take effect until the grantor's death, it will be sustained as a present grant of a future interest. (*Noble* v. *Fickes,* 230 Ill. 594; *Shackleton* v. *Sebree,* 86 id. 616.) A duly executed deed found in the hands of the grantee raises a strong implication that it has been delivered, and only clear and convincing evidence can overcome that presumption." Upon a similar question, it was further held, in *Nowakowski* v. *Sobeziak,* 270 Ill. 622: "The delivery of a deed in the grantor's lifetime changes the effect of an instrument which might, but for the delivery, be of a testamentary character." ·

The second contention of appellants, *i.e.,* that the deed of February 24, 1916, at most conveyed an undivided one-half interest to Annie F. Gray as a tenant in common, is based upon our decision in *Deslauriers* v. *Senesac,* 331 Ill. 437, and several cases from outside jurisdictions, particularly Michigan. From the Illinois case, it appears that one Ida Deslauriers, as the owner of certain lots, joined with her husband in the execution of a warranty deed purporting to convey said real estate to themselves as joint tenants and not as tenants in common. The deed was recorded in due time and about seven years later the wife died. Shortly thereafter the husband died and a contest arose between the heirs and devisees of the parties to the deed, it being contended, on the one hand, that a joint tenancy was created by the deed, while other parties to the litigation asserted that it conveyed only an undivided one-half to Mr. Deslauriers as a tenant in common. In discussing the questions thus presented, this court said: "It is manifest from the deed that she did not intend to convey the whole and entire interest to her husband, for she retained an equal share or interest. Hence the interests of Ida Deslauriers and her husband were neither acquired by one and the same conveyance nor did they vest at one and the same time. Two of the essential properties of a joint estate— the unity of title and the unity of time—were therefore lacking. * * * It was not for failure to ascertain the intention of the grantors that the grantees did not take title in joint tenancy, but because, under the law, a joint tenancy could not be created in the manner which was here attempted." It was, therefore, concluded that each owned an undivided one-half interest as tenants in common.

That case was recently approved in *Porter* v. *Porter,* 381 Ill. 322, and, of course, stands as the rule of construction in Illinois when comparable facts are involved. However, substantially different facts are here presented, and when we apply the guiding rules of intention already stated

it becomes apparent that another result must follow. The key to the distinction lies in this sentence of the Deslauriers opinion: "It is manifest from the deed that she did not intend to convey the whole and entire interest to her husband, for she retained an equal share or interest." Exactly the opposite is true with the Henry Gray deed, for, by its very language, all of the land in question was conveyed "in fee simple forever." An estate in joint tenancy was not attempted, nor could it be so construed, for the very reasons pointed out in the *Deslauriers case,* and there was obviously no intention to create a tenancy in common. If the intention of the parties could have been recognized in the *Deslauriers case,* each would have had an undivided interest which he could have conveyed at will. No such intention is anywhere expressed in the Gray deed. The result of that case is purely an artificial creature of the law and should not be extended if the true intention of the parties can be permitted under the law, which we believe can be done here, as will next be pointed out. For similar reasons, the authorities from other States, cited by appellants, are inapplicable here.

Expressed in the simplest terms, it is our considered conclusion that Henry Gray intended to convey the fee title to his wife, subject, however, to a condition of defeasance if she should predecease him. Insofar as this land was concerned, his support and maintenance were already provided for by his ownership and there would have been no point in simply making a deed to himself. Furthermore, he must be considered as having known how title would have descended in the absence of such a conveyance. Thus, it was most natural, in view of his advanced years, ill-health and lack of children, to make a deed which would provide for his widow but without entirely relinquishing the possibility that he might still survive her (which appeared unlikely at that time and which did not occur.) At least he obviously intended that she should

have an interest for life, concurrently with him, and that the survivor of them should have the entire fee-simple title. Annie F. Gray's joining in the deed, even though she was the only real grantee, is readily explained either upon the basis that the parties knew it was the usual and customary procedure, or to make the deed a form of an agreement under which there would be no question that her interest was to terminate if she did not survive Henry Gray. True, the language chosen to accomplish those intentions was not the most apt, but, as said in *Phillips* v. *Gannon,* 246 Ill. 98: "It has frequently been held that the decision of a question of this character does not depend so much upon artificial rules of construction as it does upon the application of good sense and sound equity to the spirit of the contract in a given case. (4 Kent's Com.—14th ed. —*133; *Druecker* v. *McLaughlin,* [235 Ill. 367.]) Manifestly, not only good sense and sound equity but the intention of the parties to this instrument require that it be held, * * * that the title to the real estate in question vested on the delivery of the deed, * * *."

It being unnecessary to here determine the exact quantum of estates held by the Grays from February 24 to February 29, 1916, but only to permit the accomplishment of their ultimate intention, if not contrary to fixed rules of law or decision, we believe it is apparent that the following cases, among many, readily sustain the conclusion of the trial court. Thus, in *Mittel* v. *Karl,* 133 Ill. 65, the title to certain land was first vested in Michael Jobst and Maria Jobst, his wife, as tenants in common. They conveyed to a third party who immediately executed a deed to Maria Jobst and Michael Jobst, her husband, and "the survivor of them, in his or her own right." Thereafter, the wife died first, then the husband, and a controversy arose over the title. After deciding that a joint tenancy was not created, for reasons similar to those expressed in the *Deslauriers case,* this court held: "We think the lan-

·guage of the deed, when properly understood, will admit of but one construction, and that is, that the premises were conveyed to Maria and Michael Jobst for life, with a contingent remainder in fee to the survivor. By the language of the grant, 'to Michael Jobst and Maria Jobst, and the survivor of them, in his or her own right,' it was doubtless intended that the one who should die first should take only a life estate in the premises, with remainder in fee to the survivor and his heirs." The same rule was approved in *Cover* v. *James,* 217 Ill. 309, where the deed provided, "In case of the death of either A. Ford Cover or Bessie Cover [grantees], the other to have the whole of said property without litigation."

In *Phillips* v. *Gannon,* 246 Ill. 98, one John W. Phillips desired to provide for his care in old age and, accordingly, conveyed certain land to a grandson, Thomas L. Gannon, and his wife, in consideration of their furnishing him a home, comfortable support and a decent burial. The indenture then provided that "the performance of said covenants is hereby made a condition precedent to the vesting of title of said premises in said parties of the second part." All conditions were in fact performed but after the death of Phillips, his heirs claimed, as is contended here, that the deed was in effect a testamentary disposition of property and thus void. In denying such a result, this court alluded to the importance of recognizing the intention of parties and said of the above-quoted provision: "Construing this clause in the light of the surrounding circumstances and in connection with the entire instrument, it was clearly intended to mean that the title should vest at once, but that the grantees should not have an absolute, indefeasible title until they had performed all of the conditions set out in the instrument."

Wording of similar import was also involved in the case of *Bowler* v. *Bowler,* 176 Ill. 541. There, William P. Bowler and wife desired to provide for a son, William H.

Bowler, and, accordingly, executed to him a deed which provided, among other things: "* * * the object and intention of this deed being to give the said parties of the first part the possession and control of said real estate during the lifetime of the said William P. Bowler, and the title to the same is not to vest in the said William H. Bowler, his heirs and assigns, until after the death of the said William P. Bowler; and it is further understood, and is a condition in this conveyance, that if the said William H. Bowler should depart this life before the said William P. Bowler, that in that case this conveyance is to be null and void." A question arose as to the construction of this deed, and, after holding that the grantor doubtless intended to convey a present interest, this court upheld the fee title of the grantee, saying: "The instrument also provides, as a condition to the enjoyment of the remainder by the grantee, that he should be alive at the death of the grantor. It is claimed by counsel for appellant that this is a condition precedent to the vesting of the remainder in William H. Bowler. Whether it should be treated as a condition precedent or subsequent depends upon the intention of the grantor, and, considering the whole instrument together, we think it was clearly meant as a condition subsequent. As such, the grantee having outlived William P. Bowler, the condition has been fulfilled."

Annie F. Gray having survived Henry Gray, the title which she received likewise became one in fee simple upon his death. The record chain of title being thereafter unbroken down to appellees Roy Stanford and Amy Davis, it follows that the decree of the court below must be affirmed in all particulars.

*Decree affirmed.*

Mr. Justice Smith took no part in the consideration or decision of this case.