(No. 36397.—

THE CITY OF WOOD RIVER, Appellee, vs. ALICE G. HART et al., Appellants.

*Opinion filed September 22, 1961.*

Green and Hoagland, of Alton, (James K. Almeter, and Karl K. Hoagland, Jr., of counsel,) for appellants.

L. H. Holland, and Thomas Holland, both of Wood River, and Emerson Baetz, of Alton, for appellee.

Mr. Justice House delivered the opinion of the court:

The city of Wood River, as first alternative devisee of a farm under the will of Robert E. Lee Belk, sought a declaratory judgment as to its rights to the farm. The defendants, heirs and second alternative devisees under the will, then filed an ejectment suit against the city seeking its ouster. The two actions were consolidated for trial and the issues were resolved in favor of the city in each case. A freehold is involved.

The testator provided in his will that a 233-acre farm located about two miles outside of the city of Wood River was to become the property of the town of Wood River for a public park and recreation grounds. The devise was sub-

ject to the provisions that within two years after probate a township park district was to be organized, the park should be named Belk Memorial Park, a suitable bronze tablet was to be placed at the park entrance, and no intoxicating liquor was ever to be sold therein. The executor was empowered to collect rentals and pay taxes on the farm until such time as it should be determined who was entitled to the land under the will. The question of acceptance of the devise was submitted to a referendum of the electorate of the town within two years. The proposition failed and the devise to the town lapsed.

The will designated the city of Wood River as first alternative devisee in the following language:

"I give and devise said real estate to the City of Wood River, Illinois, for Public Park and Recreation Grounds, subject to the condition that no intoxicating liquor shall be sold on said real estate, and provided that said Park shall be called 'Belk Memorial Park,' and provided also that a suitable Bronze Tablet shall be placed at the main entrance to said Park reciting that such Park was given for use as a 'Public Park' by Robert E. Lee Belk and thereupon the title to said real estate shall vest in the City of Wood River, Illinois; said real estate to be used for Public Park and Recreation purposes.

"And in the event * * * that the City of Wood River * * * refuses to accept said devise as hereinbefore set forth within one year after they are entitled to do so, then in such events said real estate shall go to and I hereby give and devise the same in such events only to my heirs at law, to have and to hold to them in such events only forever."

The theory of the heirs is that the devise was on the condition precedent that the farm be transformed into a public park within a reasonable time, that a reasonable time has elapsed without conversion to public park purposes and therefore title never passed. They also contend that the city failed to make a valid acceptance of the devise.

We can readily dispose of the contention that the city failed to accept the devise. It adopted an ordinance effective December 22, 1953, within the prescribed year, formally accepting the property as a public park and recreation

ground, named the park, directed the erection of a suitable bronze plaque as required by the will, and prohibited the sale of alcoholic liquors on the property. It is conceded that the city took possession and has continued in possession for more than five years. Income from the land has been paid to the city since its acceptance and placed by the city in a fund entitled "Belk Memorial Fund." These acts certainly constituted formal acceptance. Whether the naming of the park and placing of a suitably inscribed bronze tablet at the entrance were conditions precedent is immaterial since those acts were admittedly carried out. The restriction that liquor should not be sold on the premises obviously was not a condition precedent because the city would have no jurisdiction over the land until acceptance and taking possession. The passage of the prohibitory ordinance against liquor sales and making any such sales a misdemeanor was all that could be done. In any event there is no claim that the ordinance has been violated in this respect.

This brings us to the primary contention of the heirs, that the development of the land into a park as an accomplished fact was a condition precedent to the vesting of title. They read into the words in the granting clause "for Public Park and Recreation Grounds," when coupled with the remainder of the will, an intention on the part of the testator to create a condition precedent so that title would not pass until after the development of the land for the quoted purposes.

In approaching the problem we bear in mind the cardinal rule of testamentary construction that the intention of the testator is to be ascertained and given effect from the will as a whole. (*Dahmer* v. *Wensler,* 350 Ill. 23; *Davidson* v. *Davidson,* 2 Ill.2d 197.) Property may be limited on condition, the condition sometimes being precedent and sometimes subsequent. As we noted in *Nowak* v. *Dombrowski,* 267 Ill. 103, and many subsequent cases, it is frequently difficult to ascertain whether a devise is subject to a condi-

tion, an equitable charge, trust, convenant obligation, or merely a statement of motive for making the gift. Where a testator's meaning is doubtful, the courts prefer to construe the conditions as subsequent rather than precedent, (*Phillips* v. *Gannon,* 246 Ill. 98; *Weaver* v. *Ashcraft,* 339 Ill. 197,) and similarly if there be doubt whether a provision was intended as a condition subsequent or as a covenant, it will be construed as a covenant. (*Koch* v. *Streuter,* 232 Ill. 594; *Mathis* v. *Mathis,* 402 Ill. 60.) The salutary reason behind these preferments is that the law favors a construction which vests an estate rather than defeats it, since courts abhor forfeitures.

The cases of *Maguire* v. *City of Macomb,* 293 Ill. 441, which involved a devise of land for park purposes, and *Seibold* v. *City of Naperville,* (D.C.N.D. Ill., E.D.) 19 F. Supp. 281, where funds were bequeathed for a hospital, are relied upon by the heirs in support of their position. In the *Macomb case* the devise was made to the city of Macomb subject to certain conditions which included, in addition to formal acceptance, a provision that it take possession and improve the land as a public park within a reasonable time. That case can be distinguished because of the difference in language used and the failure of the city to take possession. In the *Naperville case* the bequest was made for the purpose of establishing a hospital under the statutes and the court construed the meaning of the will to be that action under the statutes was a condition precedent. Furthermore, a careful reading of the *Macomb* and *Naperville cases* reveals that underlying the holding in each was the factor that acceptance was not made in good faith and that there was no intention to comply with the conditions at the time of formal acceptance.

We are of the opinion that the recitation in the will of the purposes for which the land was devised does not show any intent on the part of the testator that conversion of the land into a park was a condition precedent to the vesting

of title. We are further of the opinion that the record demonstrates an acceptance of the devise in good faith, as hereinafter pointed out, and that title vested as of the effective date of the ordinance.

The heirs contend in the alternative that if there was a vesting of title in the city it has failed to convert a substantial portion of the farm to a public park within a reasonable time, and argue that the city be divested of title to all of the farm, or to that part which it has failed to convert to a park, and that title be declared to have reverted to the heirs as second alternative devisees.

There is little elaboration of this theory. It is not contended that a condition subsequent exists but the heirs vaguely place the argument on a trust theory. The possibility of the existence of a general charitable purpose by the testator (as in *City of Aurora ex rel. Egan* v. *Y.M.C.A.,* 9 Ill.2d 286) is recognized but denied. However, as we view the record, the actions of the city subsequent to acceptance are of such nature as to raise no issue requiring us to pass upon the eventuality that the land may be abandoned for the purpose for which it was devised.

Immediately after acceptance of the devise another ordinance was adopted creating the "Belk Park Commission" of 7 members to plan, lay out, and commence the development of the park. A plan was drawn placing the park entrance on the south side and an aerial photograph was taken. The development was started in the southeast corner and proceeds northward. Culverts from 18 to 40 inches were installed and, at the southeast corner a four-lane oil-sealed drive with a median strip was built, which continues north as a two-lane oil roadway and curves east around the perimeter of a planned lake. Water and electricity have been brought into the area, two drinking fountains and three street lights have been installed, a shelter home, park benches and barbeque ovens have been constructed, two baseball diamonds have been laid out and graded; an

earthen dam to impound water for a lake is under construc-
tion. Grass has been sowed and mowing done, mostly in
and adjacent to the developed area.

The heirs see considerable significance in the fact that
much of the work has been done by the volunteer labor of
individuals and organizations and that the funds for im-
provements have come from voluntary contributions rather
than from annual tax levies or a bond issue. They point
out that of the cash total of $13,070.44 received by the
Belk Park Fund from its inception through the year 1959,
$4942.66 came from rentals, $3110.78 from donations,
$1642 from an oil company for a pipeline easement and
only $3375 from the city's general fund in the last year.
Expenditures from the fund during the same period have
totalled $11,287.91 and show a steady annual increase from
$1412.83 in 1955 to $3119.89 in 1959.

The heirs are sharply critical of the city for developing
only what appears from the exhibits to be about 20 acres or
less than 10 per cent of the farm for strictly park and recrea-
tion purposes, with only perfunctory attention to actual
development of the balance.

Upon analyzing all of the evidence it seems evident that
the city accepted the devise in good faith with the intention
of developing the whole farm for park and recreation pur-
poses. This is borne out by its subsequent planning and de-
velopment program. The purpose and intention of the testa-
tor as manifested by his will was that the whole farm be-
come a park, but there is no suggestion of a time limit for
the development.

The fact that cities with a population under 15,000, of
which Wood River is admittedly one, are empowered to
borrow money and levy a general tax to maintain a park,
(see Ill. Rev. Stat. 1959, chap. 24, pars. 52—8 and 52—9,)
does not require that it do so if funds and volunteer labor
are obtainable from other sources. The citizenry, organiza-
tions and the city authorities are to be commended rather

than condemned for their donations of time, effort and funds to develop this community project.

The city alleged that some of the land which cannot be immediately developed has grown up in weeds which is deleterious to the land and may create a nuisance or hazard to adjoining farm lands. It prayed for authority to cultivate or rent for cultivation such portions as cannot be developed immediately for park or recreational purposes. The decree is silent on this question, except for holding that the city may use the real estate "in any manner not inconsistent with the general use of land for park and recreational purposes." Cultivation of the land not required for immediate development is good husbandry and will tend to prevent saturation with weed seed and growth of sprouts.

Since we have held that the devise was not on condition precedent, title vested in the city and the heirs take nothing as second alternative devisees. Furthermore, the appellants as heirs of the testator-donor have wholly failed to show that the city should be divested of title to all or any part of the land and have failed to prove that they are entitled to it.

The judgment and decree of the circuit court of Madison County are affirmed.

*Judgment and decree affirmed.*